GREEN v. MONTGOMERY et al. (No. 958.)

(Court of Civil Appeals of Texas. El Paso.
April 17, 1919. Rehearing Denied
May 8, 1919.)

1. EVIDENCE ⬤➡165(2)—BEST AND SECON-
DARY EVIDENCE—CONTENTS OF LEASE.

Since a lease itself is the best evidence of
its contents, statements by lessee as to the con-
tents of the lease are inadmissible as secondary
evidence.

2. LANDLORD AND TENANT ⬤➡231(1)—AC-
TIONS FOR RENT—BURDEN OF PROOF.

In an action by a lessee against a sublessee
on the rent contract, it is not plaintiff's duty to
show that he had paid the rental on the land
leased due from him as lessee, to the owners of
the land; such matter being defensive.

3. LANDLORD AND TENANT ⬤➡96—TERMINA-
TION OF SUBLEASE—SALE OF PREMISES TO
SUBLESSEE.

Where a lessee of land under a lease, reserv-
ing the owner's right to sell and to cancel the
lease at any time, sublets the land, and the sub-
lessee subsequently, but before entering into
possession, purchases the land from the owner,
the sublease is not affected.

Appeal from District Court, Jones County;
Jno. B. Thomas, Judge.

Action by D. C. Cave and another against
J. C. Montgomery, Jr., and W. M. Green, with
cross-action by Montgomery against Green
and cross-action by Green against Mont-
gomery. Judgment in favor of plaintiffs
against Montgomery and Green and in
favor of Montgomery against Green, and
Green alone appeals. Affirmed.

Joe C. Randel, of Hamlin, for appellant.
Grisham Bros., of Eastland, C. P. Chastain,
of Hamlin, and E. T. Brooks, of Abilene, for
appellees.

WALTHALL, J. D. C. Cave and D.
Trammel brought this suit against J. C.
Montgomery, Jr., and W. M. Green, to re-
cover of Montgomery the cancellation of four
$900 notes, and the sum of $182.29, on
amount due them for unearned rent on cer-
tain lands, and against Green for the sum of
$114.58 on amount due them for unearned
rent on certain land, growing out of two
rent contracts.

On September 14, 1914, Montgomery own-
ed, or had under contract of purchase from
the state, 6¼ sections of land in Nolan coun-
ty, known as free school lands, and had
leased of the Texas & Pacific Railway Com-
pany 2¾ sections; the lease lands being sub-
ject to sale from year to year. On that date
Montgomery, by written contract, referred
to as contract No. 1, leased all of the nine
sections to Cave and Trammel for five years
for the sum or consideration of $100 per sec-

tion, per year, the first year's rental, $900,
paid in cash, and the four year's rental rep-
resented by four $900 notes, due and pay-
able in one, two, three, and four years. On
April 5, 1915, Montgomery, as party of the
first part, Green, as party of the second part,
and Cave and Trammel, as parties of the
third part, entered into the second contract
with reference to said nine sections of land.
The suit here grows out of an alleged breach
of this second contract. The contract is
lengthy, and we will partly state such por-
tions as seem to be material to the issues
presented.

The first paragraph of the contract states
an agreement that Montgomery is to sell to
Green 6¼ sections of said land with cove-
nants of warranty except as stated, and the
terms of sale. The second and third
paragraphs provide that Montgomery shall
furnish Green an abstract of title of lands
sold showing good merchantable titles there-
to and that the contract of sale shall be
closed on or before the 1st day of June, 1915.
The fourth, fifth, and sixth paragraphs have
reference to the consideration to be paid
for the lands, and it is not necessary to state
it more definitely. The eighth paragraph
provides that as between Montgomery and
Green, and as to the 2¾ leased sections, the
provisions of the lease contract then existing
between Montgomery and Cave and Tram-
mel shall continue under the terms of the
contract between Montgomery and Cave and
Trammel, and that, upon the closing of this
second contract of purchase, Green should
execute to Montgomery his four notes each
for $275, representing the rental on said 2¾
sections for four years from September 14.
1915, and that Montgomery was then to sur-
render to Cave and Trammel their said four
$900 notes. The ninth paragraph provides
that Cave and Trammel are to pay to Mont-
gomery one-half of the expenses of furnish-
ing to Green the abstract of title, and the
expenses of executing this second contract,
and to release Montgomery from his obliga-
tions to them under the first contract. The
tenth paragraph provides that Green is to
pay to Cave and Trammel the rental paid by
them to Montgomery and unearned, from the
time he (Green) gets possession of the 2¾
sections. The eleventh paragraph provides
that, from the date this second contract is
closed and the consideration paid by Green
to Montgomery on the purchase price of the
land sold, the 6¼ sections, Montgomery will
rebate to Cave and Trammel the rental paid
and unearned up to September 14, 1915, on
the 6½ sections.

Green alone takes this appeal, and we will
state only such issues between Montgomery
and Green as may be necessary to pass upon
the assignments of error presented.

By cross-action Montgomery seeks to re-

cover of Green, under paragraph 8 of the second contract as above stated, for the rent of the 2¾ sections for the four years from September 14, 1915.

Green, as against Montgomery's cross-action, pleaded a failure of consideration, alleging that Montgomery sold to him the 6¼ sections, and that the 2¾ sections were held under lease by Montgomery from the owners, subject to sale at any time, and that said 2¾ sections were sold by the owners prior to September 14, 1915; that said four $275 notes were to be executed by him to Montgomery for the lease of said 2¾ sections; that by reason of the sale of said 2¾ sections he never obtained possession of said 2¾ sections. By cross-action against Montgomery, Green alleges that he did not get possession of either section 43 or 73, as provided in the seventh paragraph of the second contract, and he prays for damages for the loss of the use of said section.

The case was tried without the aid of a jury, and judgment was rendered in favor of Cave and Trammel against Montgomery canceling the four $900 notes, and for $147.16; and in favor of Cave and Trammel against Green for $114.58; and in favor of Montgomery against Green (after a remittitur was entered on the motion for new trial), in the sum of $677.93. Green presents this appeal.

The court overruled Green's general demurrer to Montgomery's cross-action, and this ruling is complained of in the first assignment. The court was not in error in overruling the general demurrer. We think the matters suggested in the two propositions under the assignments, not appearing in the contracts themselves, nor in the pleading of Montgomery in his answer and cross-action, would more properly appear in a plea than in a general demurrer. The second assignment is directed to the overruling of a special exception to Montgomery's answer and cross-action. In allowing the bill of exception to the ruling, the court says that no evidence was offered to prove a custom, the fact in the pleading excepted to. If error, it was not reversible error.

[1] The third assignment claims error in the court's sustaining an objection of Montgomery in striking from the record the testimony of said Montgomery when he was upon the witness stand and testified as follows:

"That said lease contract from the owners of the land, Canda, Drake, and Kloh, to J. C. Montgomery, Jr., provided as follows."

Then follows a portion of the lease contract between the owners, Canda, Drake, and Kloh, to Montgomery, providing that Montgomery will not assign or transfer that lease nor any of the land included without the consent of the owners. Montgomery, as we understand the record, was then testifying on cross-examination, and, when it was sought to prove by Montgomery the provision in the lease, his attorneys objected, and the court sustained the objection. We think it was not error. Montgomery's statement as to the contents of the lease was secondary evidence. The lease itself would have been the best evidence of its contents. The evidence sought by appellant was not for the purpose of identifying the lease, but to prove its contents. The error assigned is that the court excluded the testimony of Montgomery. Neither the assignment nor the statement thereunder shows that the lease was then being offered, or that the court excluded the lease.

The fourth assignment is waived. The fifth assignment asserts that the rendition of the judgment was error for the reason that no evidence was offered by Montgomery as to the exact amount that would be required to be paid by Montgomery to the owners to keep the lease alive during the time Montgomery had leased to Green. The proposition is: Montgomery was asking affirmative relief and that he must lay a predicate for the relief sought in his pleading and the proof must sustain the pleading. Not having the four $275 notes, Montgomery based his suit on the contract. The contract sued on and read in evidence does not disclose that any amount of rent on the lease from the owners to Montgomery would be due the owners to keep the contract alive. The assignment assumes that some amount of money due as rent would necessarily have to be paid by Montgomery to the owners to keep the contract alive. To show an erroneous judgment, we think, it should affirmatively appear in some way that some amount would be due the owners, as rent on Montgomery's lease, and that such amount in some way would affect the judgment rendered. Now, Montgomery pleaded that it was his duty under the contract sued on to keep paid the amounts due the owners as rentals, and that after paying same Green "would have due to him as a residue and balance the sum of $690.43, balance unpaid on said four notes of $275 each."

[2] We understand from the record that, because of Montgomery's pleading as above, the court, on Green's motion for a new trial and insistence that the judgment was excessive to the amount of $409.57, remitted from the judgment first entered the $409.57. We think, in the absence of the pleading as above indicated, the effect of the provision of subdivision (a) under paragraph 2 of the first contract between Cave and Trammel and Montgomery, as pleaded above, would be to establish a credit on Green's obligation for whatever amount was shown to be necessary to keep the lease with the owners alive; but we think the duty would not be on Montgomery as a condition precedent to his right to recover to show that he had "kept paid the rental thereon to the owners of said

land," such matter being defensive. The "predicate for the relief" here is the contract to pay a definite and fixed sum, $1,100, as rent for the leased sections. We are not in conflict in so holding with Tex. Glass & Paint Co. v. Darnell, 185 S. W. 965, as in that case, against the railroad company, the paint company had stated the contract price with Darnell for the glass, and asked judgment over against the railroad company on the same measure of damage and for like amount. The Texas Glass & Paint Company had no contract with the railroad company as to value of the glass, and, in stating the relief asked against the railroad company, had laid no predicate therefor in stating its cause of action.

What we have said in discussing the fifth assignment applies also to the sixth, in which it is claimed that the judgment is unsupported by the evidence for the reason that the evidence shows that it would have cost Montgomery $38 per year for one year on section 41 to keep alive said lease on said section, there being no evidence offered as to what it would cost Montgomery to keep alive the contract and pay the rentals on the other 2¾ sections.

The seventh assignment claims release from any liability under the contract, for the reason that the undisputed evidence shows that Montgomery held the 2¾ sections under lease from the owners, subject to sale, and that same were sold prior to the 14th day of September, 1915. The record shows that the 2¾ sections were leased to Montgomery subject to sale at any time, and that they were sold to appellant and his son before the 14th day of September, 1915. The fact that the sections were subject to sale was known to all of the parties at the time of entering into the rent contract, and they contracted with reference thereto; agreed that at the termination of the rent contract to turn back to Montgomery the possession of the leased sections; and further "expressly agreed that the lessees herein shall not attempt to lease out from under the lessor any of the above described lands now leased, or in the possession of the lessor herein." The above references and quotation are from the first contract, to which appellant was not a party; but the record shows that appellant took possession of all of said lands and substituted himself in place of Cave and Trammel, with reference to said lands, and agreed to perform the terms of the first contract. True, Green did not lease the lands from the owners, and technically did not violate the terms of the rent contract in buying the lands. But by buying the lands he evidently violated the spirit and meaning of the contract he had with Montgomery, and with Cave and Trammel in refusing to execute the four $275 notes and carrying out his lease contract with Montgomery for the term of years as agreed.

[3] The difficult question in this case is presented: Having entered into the rent contract with Montgomery and with Cave and Trammel, with full knowledge that the lands were leased to Montgomery subject to sale, did Green's purchase of the sections release him from his contract with Montgomery and with Cave and Trammel? By his purchase of the lands, Green put himself in the place of the former owner as to title. The former owner in leasing to Montgomery had reserved the rights to "sell same or any part thereof at any time during the above-mentioned period, and to cancel and to determine this lease at any time." Furneaux et al. v. Webb et al., 33 Tex. Civ. App. 560, 77 S. W. 828, is a case in which appellants held the lands under lease contracts with appellees, who in turn were the lessees of Morgan Jones. The lease from Jones and the subleases to appellants were made subject to sale. The alleged wrongful conduct of appellees consisted in obtaining possession of the lands from appellants by means of false and fraudulent representations to the effect that appellees had purchased the lands from the owners. The suit was for actual and exemplary damages. The Ft. Worth court, through Mr. Justice Speer, said:

"The effect of the subject to sale clause in appellants' lease contract with Sidney Webb & Co. was that the same should be terminated upon a sale by the owners to any person other than the lessees, Sidney Webb and Samuel Scaling. It would not do to hold that Sidney Webb & Co., who had subleased the lands in controversy to Furneaux Bros., subject to sale by the owners, could themselves become the purchasers, and thereby put an end to the sublease and oust their tenants. The meaning of the contract was that appellants should hold under the sublease for its full period, unless the owners should make such sale of the lands as to put them beyond the control of Sidney Webb & Co. Any other construction would place it in the power of Sidney Webb & Co. to terminate their lease to appellants by becoming the owners of the land in fee simple, instead of a leasehold merely—a thing evidently inconsistent with the rights of the parties. * * * The owners would have a perfect right to sell to Sidney Webb & Co., and such action would, of course, terminate the lease to them, but it by no means follows that it would have that effect upon appellants' sublease. On the contrary, we think it would have no effect whatever."

Applying that holding, which we think is sound, to the case presented here: If Montgomery, after leasing to Green, could not, by purchasing the lands, terminate his lease contract with Green, upon what theory would Green, by purchasing the lands, terminate his lease contract with Montgomery? We think Montgomery and Green stand on an equality as to the provision in the lease contract between Montgomery and the owners. And we think it would not affect the

question because of the fact that the sale of the land to Green was consummated before the rent contract between Montgomery and Green was to go into effect; their relation as landlord and tenant, as to said lands, was fixed by their contract at the time their contract was entered into. The present holding of Green is not under a title different and paramount from that under which Montgomery held at the time of entering into the rent contract.

What is said in considering the seventh assignment applies to the eighth and ninth, in which it is insisted that Green would not be liable to Cave and Trammel for the $114.58, because the lands were leased subject to sale, and were sold.

Finding no reversible error, the case is affirmed.