CITY OF BEAUMONT V. R. A. MOORE.

No. A-1051. Decided April 30, 1947.
Rehearing overruled June 18, 1947.
(202 S. W., 2d Series, 448.)

*George E. Murphy, Harriett A. Rasor, L. T. DeForest* and *John L. Bell,* all of Beaumont, for petitioner.

*Geo. M. Sonfield* and *J. B. Morris,* both of Beaumont, and *K. W. Stephenson,* of Orange, for respondent.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

The respondent, R. A. Moore, sued the petitioner, the City of Beaumont, to recover $13,772.00 which he had paid the city for a 1/16 royalty interest in 275.44 acres of land owned and used by the city as an airport. He also sought cancellation of various instruments of conveyance. The trial court sustained

certain exceptions to his petition, and, upon his refusal to amend, dismissed the suit. The court of civil appeals reversed the judgment and remanded the cause to the trial court. 195 S. W. (2d) 968.

It therefore becomes necessary to review the pleadings of the respondent.

It appears from Moore's allegations that the City of Beaumont is a municipal corporation operating under the Home Rule Amendment. Vernon's Ann. St. Const. Art. 9, Sec. 5. The city purchased the fee simple title to the land in 1929. It was paid for from the proceeds of bonds voted and issued by the city for the purpose of acquiring an airport; and at all times material to this controversy the land in its entirety was incumbered and impressed with a public servitude for use of the surface as an airport.

Nevertheless, when in 1935 the land became valuable because of oil production and drilling activities upon adjacent lands, the city began negotiations with Moore for the sale to him of the 1/16th mineral royalty for the sum of $13,772.00, which Moore agreed to purchase at that price. The city had theretofore executed an oil and gas lease of the land to Joseph P. Landry, and the negotiations between Moore and the city were conducted and the agreements entered into under the mutual belief that the land involved was subject to the existing oil and gas lease. On October 17, 1935, the city tendered Moore a deed conveying him the royalty interest mentioned, which he refused to accept because the city had not properly authorized the sale. On November 12, 1935, the city council passed a resolution formally authorizing the conveyance. On the following day, November 13, 1935, Moore paid the city the agreed consideration of $13,772.00, and the city delivered him the deed. The city appropriated the money for municipal purposes.

Thereupon Moore entered into negotiations with Julius M. Gordon to sell him a portion of the mineral estate he had acquired from the city. Gordon raised a question as to the necessity of an ordinance rather than a resolution authorizing the conveyance to Moore. The city agreed to obviate that objection, and on January 7, 1936, an ordinance was duly enacted by the city authorizing the sale. Pursuant thereto another general warranty deed dated January 14, 1936, was duly executed by the city and delivered to Moore which was substantially in the same

language as the former deed. It purports to convey a 1/16 perpetual royalty in the minerals in the 275.44 acres of land out of the Ashel Savery League in Jefferson County, Texas, known as "the City of Beaumont Airport Tract," and stipulated that the provision for delivering payment of such royalty should constitute a covenant running with the land but that it should not be construed as obligating the grantor to drill or otherwise operate for oil, gas or other minerals against its will. It contained a general warranty clause in the usual terms. It further stipulated that the land was under an oil and gas lease originally executed in favor of Joseph P. Landry, and then held by the Humble Oil & Refining Company, and that the sale was subject to said lease but included one-half of all the oil royalty or other minerals due to be paid under the terms of the lease.

After the passage of the ordinance and the delivery of the second general warranty deed, Gordon still refused to carry out the terms of his agreement to purchase part of Moore's royalty because Gordon thought the city had no authority to convey the minerals since the land had been purchased with the proceeds of a bond issue voted for airport purposes. A lawsuit followed between Moore and Gordon in which the former sought specific performance of the purchase contract. Gordon defended the suit on the ground that the city was without authority to sell the land, or any portion thereof, for purposes inconsistent with its use as an airport, and that consequently Moore could not convey any title thereto. In that suit judgment was rendered for Gordon on February 26, 1937. That judgment was affirmed by the court of civil appeals on October 27, 1938. (Moore v. Gordon, 122 S. W. (2d) 239.) An application for writ of error by Moore was dismissed by this court on January 25, 1939, and a motion for rehearing was overruled February 15, 1939. (Moore v. Gordon, 131 Texas 655.)

On March 21, 1939, Moore presented the city with his demand in writing requesting the city to comply with its contract of warranty in its deed and to reimburse him with the purchase price paid for the royalty interest. The city refused his claim. Thereafter, on September 29, 1939, his original petition was filed in the instant suit. Thus it appears that suit was filed more than two years, but less than four years, from the date of the conveyance.

In his second amended original petition, upon which the issues as to pleadings were joined, Moore set out the facts above

stated and pleaded a covenant of general warranty and an implied covenant against incumbrances under article 1297, Vernon's Ann. Civ. St., and sought recovery under such warranties on the theory that his title had failed because of the servitude. He also treated the conveyance as void and sought relief because of mutual mistake of the parties. In this connection he asked for cancellation and rescission of all instruments executed by the city with the resultant return to him of the purchase price. He further asserted a cause of action, in the alternative, for money had and received.

By its special exceptions, which were sustained by the trial court, the city presented the following defenses: (1) That the conveyance was inconsistent with the use of the land as an airport and thus it was ultra vires and void because the land was burdened with such a servitude; (2) that since the city was without power to convey the royalty it was without authority to make the warranties; and (3) that Moore's cause of action was barred by the two-year statute of limitations.

The court of civil appeals held that the city's conveyance to Moore was not void; that the deeds vested Moore with a royalty interest burdened with a servitude which made enjoyment depend upon the contingency of the city's abandonment of the whole or a portion of the airport; and that this was not the interest with which he and the city purported to deal. That court further held that the former case of Moore v. Gordon, 122 S. W. (2d) 239, did not determine the issues in this suit. We agree with these conclusions.

■ Since the city had acquired the land with the proceeds of municipal bonds which had been voted and issued for the purpose of acquiring an airport, the land thus purchased became dedicated to that purpose and the land could not be used for any other purpose which would interfere with its use as an airport until such use in whole or in part was lawfully abandoned by the city. Clement v. City of Paris, 107 Texas 200, 175 S. W. 672; City of Beaumont v. Matthew Cartwright Land & Improvement Co., 224 S. W. 589, writ refused; Sayles v. City of Abilene, 290 S. W. 239, affirmed Tex. Com. App., 295 S. W. 578.

■ The suit of Moore v. Gordon was one in which the only question was whether Moore could enforce specific performance of his contract with Gordon wherein he had obligated himself to furnish a good and merchantable title to a portion of the royalty

which Gordon had purchased free of incumbrances. The court in that case correctly held that Moore was not entitled to the relief sought when he was tendering a royalty interest burdened with a servitude which made the enjoyment thereof contingent upon the abandonment of the airport which the city was not compelled to do. The questions presented in the instant suit were not before the court in Moore v. Gordon.

The court of civil appeals further held in this case (1) that the cause of action for money had and received was barred by the two-year statute of limitations, (2) that no recovery could be had upon the warranties, but (3) that Moore had the right to rescind his agreement and recover the consideration paid by him to the city. We agree with only the first of those conclusions.

■ The cause of action for money had and received came into existence at the time the purchase money was paid and was not affected by the specific performance suit between Moore and Gordon. More than two years elapsed between the payment of the consideration and the filing of Moore's original petition in this cause. In such situations, as stated by the court of civil appeals, the two-year statute has been rigorously applied. Merryfield v. Willson, 14 Texas 224, 65 Am. Dec. 117; Rayner Cattle Co. v. Bedford, 44 S. W. 410, writ refused, 91 Texas 642, 45 S. W. 554; Causeway Investment Co. v. Nass, 131 Texas 12, 111 S. W. (2d) 703; Gould v. City of Paris, 68 Texas 511, 4 S. W. 650; City of Houston v. Finn, 139 Texas 111, 161 S. W. (2d) 776; article 5526, Vernon's Ann. Civ. St. That portion of the suit seeking recovery for money had and received is therefore barred by the two-year statute of limitations. That is not true, however, with reference to the suit on the warranties or the demand for rescission, since these actions are governed respectively by articles 5527 and 5529, Vernon's Ann. Civ. St., prescribing four-year periods of limitation. Eustis v. Cowherd, 4 Texas Civ. App. 343, 23 S. W. 737; Jones' Heirs v. Paul's Heirs, 59 Texas 41, 45; Holland v. Ashley, 158 S. W. 1033; Chicago T. & M. C. Ry. Co. v. Titterington, 84 Texas 218, 19 S. W. 472; Groesbeck v. Crow, 91 Texas 74, 40 S. W. 1028. We shall now direct our attention to the actions which come under the four-year limitation period.

■■ In our opinion Moore has not by his pleadings presented a cause of action invoking the equitable remedy of rescission. It was his constant position that the attempted conveyance was ultra vires and void. From that theory he has never departed

in any respect. Since the disposition of his case turned on the pleadings his right to equitable relief must be measured by his allegations, regardless of the correctness of his theory. Where a contract is ultra vires and void there is nothing to rescind. Causeway Inv. Co. v. Nass, 131 Texas 12, 111 S. W. (2d) 703. It also fairly appears from Moore's petition that he knew that the property constituted the city's municipal airport and that the same had been purchased with the proceeds of a bond issue. Moreover, it is well established in Texas that because of the fact that the powers of a municipal corporation are wholly statutory, a person dealing with a municipality is bound to know the extent of its authority and the limitations on its powers. City of Big Spring v. Ward, 140 Texas 609, 169 S. W. 151; City of Brenham v. Brenham Water Co., 67 Texas 542, 4 S. W. 143; City of Teague v. Sheffield, 26 S. W. (2d) 417; 38 Am. Jur. 182, Sec. 506. Thus, with Moore either in possession of all material facts, or charged with knowledge of them, all elements of fraud, overreaching or other inequities are absent from the case, which omissions, in conjunction with the speculative nature of the transaction, do not present a situation demanding or justifying equitable relief, and the court of civil appeals erred in its holding to the contrary. Corbett v. McGregor, 62 Texas Civ. App. 354, 131 S. W. 422, writ refused. We are not saying that a cause of action for rescission might not be pleaded, we simply state that none has been under the present allegations.

However, we are of the opinion that Moore has alleged a cause of action with reference to the warranties, which will necessitate an affirmance of the judgment of the court of civil appeals, although that court reversed and remanded the cause upon an erroneous theory.

As above noted, the respondent is relying upon the covenant of general warranty expressly contained in the deed and an implied covenant against incumbrances by virtue of article 1297.

■ Referring to the covenant of general warranty this court has observed that the nature and purpose of such a covenant is for the indemnity of the purchaser against the loss or injury he may sustain by a failure or defect in the vendor's title. McClelland v. Moore, 48 Texas 355, 363. The warranty does not constitute a part of the conveyance nor strengthen or enlarge the title conveyed. Richardson v. Levi, 67 Texas 359, 3 S. W. 444; White v. Dupree, 91 Texas 66, 40 S. W. 962. The

covenant against incumbrances is embraced within the general warranty clause, and it is the legal duty of the grantor to pay off and discharge all liens and incumbrances incurred prior to the conveyance which are not assumed by the warrantee. Delta County v. Blackburn, 100 Texas 51, 93 S. W. 419; Taylor v. Lane, 18 Texas Civ. App., 545, 45 S. W. 317; Robinson v. Douthit, 64 Texas 101. The covenantor warrants that he will restore the purchase price to the grantee if the land is entirely lost; and in cases of partial loss the measure of damages is modified so as to allow a recovery of only such proportion of the consideration as the amount of the loss bears to the whole of it. Hollingsworth v. Mexia, 14 Texas Civ. App. 363, 37 S. W. 455.

The statutory covenant against incumbrances, as provided by article 1297, is implied from the use of the words "grant" or "convey" in a conveyance by which an estate of inheritance or fee simple is transferred, unless the implication is restrained by express terms contained in the conveyances. Garrett v. Butler, 260 S. W. 1069; Chapin v. Ford, 194 S. W. 494. The covenant is separate and distinct from the warranty of title; it is intended to protect the grantee against rights or interests in third persons, which, while consistent with the fee being in the grantor, diminish the value of the estate conveyed. Such a covenant may be styled one of indemnity, promising compensation for damages arising from some outstanding right or interest of a third pereson; an engagement that the grantor's title is unincumbered, and a covenant in praesenti, which is breached, if at all, upon the execution and delivery of the deed, though damages may not arise until a later date. Woodward v. Harlin, 121 Texas 46, 39 S. W. (2d) 8, rehearing denied 121 Texas 46, 41 S. W. (2d) 204; Walcott v. Kershner, Tex. Com. App., 291 S. W. 195; Texas & P. R. Co. v. El Paso & N. E. R. Co., 156 S. W. 561, writ of error refused, 107 Texas 733, 161 S. W. XIV.

In Sutherland on Damages, 4th Ed. vol. 2, sec. 620, p. 2148, a clear and concise statement is found on the scope of the covenant against incumbrances, which, as pertinent here, is as follows:

"The diminution of the value of the thing granted, which is said to be the test of an incumbrance, is not to be limited to cases where the thing granted is, by reason of some outstanding right or interest in a third person of less pecuniary worth, but extends to and embraces cases where the grantee, by reason of such an outstanding right or interest, does not acquire by the

grant the complete dominion over the thing granted which the grant apparently gives, but is or may be deprived thereby of the whole or some part of its use or possession."

Webster's New International Dictionary defines the word "incumbrance," when used as a legal term, as follows:

"A burden or charge upon property; a claim or lien upon an estate, which may diminish its value; specific., any interest or right in land existing to the diminution or the value of the fee, but not preventing the passing of the fee by conveyance."

In 42 C. J. S. 549, the term is further defined in this manner:

"While it has been said that the word has no technical meaning, is not one of the terms of the law, and no definition of it will be found in the older books, yet it has also been said that it has now a fixed and definite meaning; and within the present century it has been defined to be every right to, or interest in, the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance; anything that impairs the use or transfer of property or real estate; a burden on land, depreciative of its value, such as a lien, easement, or servitude, which, although adverse to the interest of the land owner, does not conflict with his conveyance of the land in fee; a burden or charge on property; an estate, interest, or right in lands, diminishing their value to the general owner; a paramount right in, or weight on, land which may lessen its value; a legal claim or lien on an estate, which may diminish its value. The definitions, substantially as given above, have received judicial approval."

In City of Dayton v. Allred, 123 Texas 60, 68 S. W. (2d) 172, 178, 179, this court, in holding that a mortgage on the income of a waterworks plant for thirty years was an incumbrance, said:

"It has been held that the term 'incumbrance' is more comprehensive than the term 'lien.' It includes liens, and any other burden resting on the property itself, or on its title, which tends to lessen its value, or interfere with its free enjoyment. First Church of Christ, etc., v. Cox, 47 Ind. App. 536, 94 N. E. 1048.

"A mortgage on the income of a waterworks plant for thirty years would not prevent the passing of the fee by conveyance, but it would certainly constitute a burden or charge on the property which would diminish its value and interfere with its free enjoyment. Such a mortgage is therefore an incumbrance on the plant."

■ Likewise, it may be said in the instant suit that the burden of the use of the surface of the land as an airport would not prevent the passing of the fee to the royalty underneath the surface, "but it would certainly constitute a burden or charge on the property which would diminish its value and interfere with its free enjoyment." Although the deed vested Moore with a royalty interest in the land, which interest he still holds, he did not acquire complete dominion over the royalty purportedly granted because of the servitude to which the land was subjected. Moore's enjoyment of the royalty necessarily depends upon the city's abandonment of the whole or a portion of the airport, which was not the full and complete interest he contracted to purchase nor that which the city agreed to sell. Thus the servitude is an incumbrance within the meaning of the statute and the definition of the term, and therefore the title has partially failed. It is to such partial failure that the warwanties apply. The fact that the respondent cannot remove the servitude, nor compel the city to do so, is not controlling. The removal of the servitude is only one of the remedies under the covenant of warranty. Another is based on the agreement to indemnify. Where the incumbrance is not subject to discharge or removal the covenantor may still be compelled to respond in damages. 61 A. L. R. 70. That is the remedy here sought; and though the authority of the city to contract to remove the servitude might be questioned, there is no doubt of its power to make the covenant of indemnity in the event the incumbrance may not be removed. Abbott v. City of Galveston, 97 Texas 474, 79 S. W. 1064.

It is not disputed that the City of Beaumont has the power under its charter to contract generally, and under its charter and article 1267, Vernon's Ann. Civ. St., it is authorized to sell or lease its real property and to warrant the title thereto. It is the contention of the city, however, which position was upheld by the court of civil appeals, that a municipality cannot warrant that which it has no power to convey.

That position is untenable and the authorities do not support it. On the contrary, by the case of Abbott v. City of Galveston, supra, this court is committed to the opposite view; and indeed it should be since the chief purpose of a warranty is to protect the grantee where the grantor through some defect or incumbrance in the title lacks the authority to convey. To say that a city can warrant only such title as it may convey would obviate the purpose and necessity for such an agreement because no warranty is really needed where the title is clear and

regular in every respect. Nor is it material that the deed contained a provision that nothing in the instrument should be construed as obligating the city to drill or operate for oil. Such an obligation would not have existed in the absence of the provision. It was evidently inserted only as an added precaution against some ill-founded demand that the city should drill for oil. In no event could it be reasonably construed as prohibiting others to drill who might be authorized to do so, and it was to such others and not the city that respondent looked for oil developments which might enable him to fully enjoy the royalty purportedly conveyed to him.

In so far as the warranty is concerned it is not material that Moore possessed or was charged with knowledge of the servitude or the limitations of the city. His rights under the warranties arise not from any independent knowledge he possessed, or with which he was charged, but solely from the language of the deed and the warranties included and read into it. From such language it cannot be said that Moore purchased the royalty subject to the servitude nor that he assumed its burdens. There is absolutely nothing to so indicate. On the contrary, it affirmatively appears that the fee simple title to the royalty interest was embraced and included in the instrument, free and clear of all incumbrances. Such a clear title did not pass. The interest and title purportedly conveyed is defective because incumbered by the airport use. The warranties covenanted against such servitude and all other incumbrances not assumed by Moore, "and his knowledge, or means of knowledge, of the existence thereof did not preclude him from relying on the covenant." Meeley v. Lane, 205 S. W. 154; Askew v. Bruner, 205 S. W. 152; Parish v. White, 5 Texas Civ. App. 71, 24 S. W. 572; Pryor v. City of Buffalo, 197 N. Y. 123, 90 N. E. 423; 64 A. L. R. 1479.

"According to the great preponderance of authority the vendee's knowledge of the existence of an incumbrance of the first class does not affect his right to recover damages on the breach of the covenant. It has, however, been determined that it may be shown in mitigation of damages that the grantee had knowledge, at the time he purchased the property, of the existence of a restriction as to the use which could be made of it." Sutherland on Damages, 4th Ed. Vol. 2, Sec. 620, p. 2140.

Finally, summing up our conclusions, we hold (1) that the action for money had and received is barred by the two-year statute of limitations; (2) that the present pleadings will not

support the demand for rescission; but (3) that the allegations are sufficient to authorize a recovery upon the warranties.

In view of a trial upon the merits we deem it expedient to state that the measure of damages in the suit upon the warranty should be governed by the rule applicable to partial failure of title. Hynes v. Packard, 92 Texas 44, 45 S. W. 562.

The judgment of the court of civil appeals is affirmed.

Opinion delivered April 30, 1947.

Rehearing overruled June 18, 1947.

MR. JUSTICE SLATTON, dissenting.

The majority opinion concludes that the use of the land as an airport by the City of Beaumont is an encumbrance upon the title of a holder of a fractional interest of the royalty, who takes such interest without the right to make a lease, to participate in bonuses, or rentals, and with the express agreement that "nothing herein shall be construed as obligating grantor, its successors or assigns, to drill or otherwise operate for such oil, gas or other minerals against its will."

The pleadings or Moore show that before or about the time of the conveyance by the City of Beaumont to Moore there was an oil exploration project in progress on adjacent lands to the airport property.

The City had the fee simple title to the airport tract. The grantee knew the use which the City was making of the tract, as it was described "known as the City of Beaumont airport tract"; the conveyance of the City was made subject to an oil and gas lease executed by the City to Landry, which was held at the time of Moore's deed by Humble Oil & Refining Company. Moore had knowledge of the provision contained in that lease, or at least he was charged with knowledge of such condition that it in effect did not authorize the lessee to enter upon the land until a well of a certain production of oil was brought in within 300 feet of said airport tract. The City retained a fractional interest in and to the royalty and the right to make a lease on the property, to receive bonus and rentals under the lease, or under a new lease.

The fact and circumstances surrounding the lease show the the City and Moore were dealing with the property because of its then value on account of adjoining exploration for minerals on land contiguous to the airport.

The title of Moore to the fractional interest of oil, gas and other minerals under the conveyance is generally designated as a nonparticipating, perpetual royalty. The words "royalty," "bonus" and "rentals" have a well defined and understood meaning when used in conveyancing oil and gas interests. Under the conveyance the City of Beaumont and Moore agreed that Moore should not receive any of the money rentals to be paid under the existing lease. Moore did not acquire any right to make a lease, nor to participate in any bonus or rentals to be paid under any future lease.. These rights were retained by the City of Beaumont. Specifically, Moore's right was described as "a perpetual royalty in and to all the oil, gas, sulphur, coal, or other minerals upon and under or that may be produced," describing the land, and in part stating "known as the City of Beaumont airport tract." The conveyance further provided that the payments of the royalty should be construed as a covenant running with the land. It therefore appears from the above stated provisions of the conveyance that the parties recognized in the conveyance the use by the City of Beaumont of the property as an airport.

The fact that Moore received an interest in real estate under the authoritative decisions of this Court cannot, in my opinion, force the conclusion that the use of the land as an airport by the City is an encumbrance upon the title acquired by Moore. The transaction is one in which the City and Moore agreed to the sale of a fractional interest in the royalty, which was then agreed to be worth the consideration stated in the deed. The parties must have recognized the speculative nature of the transaction, the value of which would be determined upon the success or failure of the adjoining exploration project then in progress. The parties evidently recognized that if the adjoining property became productive of oil, then the airport property or a part of it would become unsuited for the surface use then being made of it by the City of Beaumont. It must have been within the contemplation of the parties that it would be to the best interests of the City, in case of success of the exploration project, to discontinue the use of a part of the property as an airport, or if all of the airport became prospective oil bearing property, then to obtain another site and move the airport

thereto. These considerations no doubt prompted the legislature to authorize cities by statute to lease city property for oil and gas. Article 1267, R. C. S. The City evidently inserted the following paragraph to avoid the very ruling which has been made by the majority, towit:

"It is expressly understood that nothing herein shall be construed as obligating grantor, its successors or assigns, to drill or otherwise operate for such oil, gas and other minerals against its will."

This provision is an express agreement of the parties that the property will not be drilled or otherwise operated for oil, gas or other minerals against the City's will.

The vendee's rights, therefore, under the conveyance, are nothing more than a title to a fractional interest in the minerals, free and clear of production costs if and when produced, depending upon the will of the City. I perceive no reason why the City cannot make this contract. Neither do I see any reason why Moore cannot.

Moore, by accepting a conveyance of the fractional royalty interest in the minerals with the express provision which restricted the exporation of the property for oil, gas or other minerals at the will of the City, does not have the right to compel an entry thereon for such purposes. Moore's interest in and to the property, while an interest in real estate, is the right to be paid his fractional portion of the royalty if and when porduced. No possessory right or interest in the surface of the land was included in his conveyance.     Since Moore received no right whatever to the surface estate, the use of it as an airport by the City is not in any wise inconsistent with his severed and speculative interest in the land. Therefore, such use cannot be an encumbrance upon his title.

If we concede for the sake of argument that the use of the property by the City of Beaumont as an airport is an encumbrance, then, to allow Moore a recovery upon the warranty, it must be upon the theory that the City has validity contracted to remove the encumbrance in the future. This is the theory upon which a recovery is allowed for known and existing encumbrances. That the City has power to warrant title to property held in its private or proprietary capacity is not questioned. Abbott v. City of Galveston, 97 Texas 474, 79 S. W. 1064. It does not follow from such a holding that the City has power either

to alienate property which is dedicated to a public use or contract to remove in the future the public use then being made of it. A good statement of the rule is found in the case of City of Fort Worth v. First Baptist Church, 268 S. W. 1016, local citation 1022, which has been reiterated in the case of City of Teague v. Sheffield, 26 S. W. (2d) 417:

"A municipal corporation has no power to cede away or embarrass the exercise of its legislative or governmental powers or functions by contracts with others so as to disable it from the performance of its public duties or from controlling in the future as it may deem best its municipal affairs, and, when a contract is made by such corporation which is not warranted by the statutory authority conferred upon it, the governing body of such city has at all times the right to declare it void and to refuse compliance therewith. See, also, Waterbury v. City of Laredo, 68 Tex. 565, 5 S. W. 81, 84; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143, 150; Bowers v. City of Taylor (Tex. Com. App.), 16 S. W. (2d) 520, 521, 522."

Thus it is seen that if the use of the property as an airport is an encumbrance, then we have a deed which the City of Beaumont did not have the power to make because a municipal corporation cannot alienate property which is devoted to a public use. Neither can it contract away its legislative functions in the future.

It must be considered that the deed of the City to Moore is an agreement for one purpose only, that is, the conveyance of a fractional royalty interest to the land. It is not a contract calling for the performance of more than one thing. Then, too, there is only one consideration. See Sayles v. City of Abilene, 290 S. W. 239, as to whether a contract is severable.

These reasons, in my opinion, preclude Moore from a recovery upon a warranty.

The fact that Moore cannot recover upon a void contract is no reason why he could not recover for money had and received. He had that right if the deed to him was void. It is upon that theory that the courts will allow a recovery by Moore in order to avoid an unjust enrichment by the City of Beaumont. But Moore did not diligently pursue that right, as he did not file his suit within two years after the money had been paid to the City. Hence the lower courts properly sustained the City's plea of the two years statute of limitation.

Summarizing my views of the case: the surface use by the City as an airport is not an encumbrance upon Moore's title; second, if such use is an encumbrance, the deed from the City to Moore is void. Hence the warranty is void. In such a case Moore's only right of recovery is for money had and received. His suit being filed more than two years after the money was paid to the City, the plea of the two years statute of limitation filed thereto was correctly sustained by the lower courts. These conclusions render unnecessary a consideration of the correct measure of damages as for partial failure of title which has been placed upon the trial court by the majority opinion without any aid in the manner of submitting it to the jury. I respectfully enter my dissent to the majority view.

Opinion delivered April 30, 1947.

Associate Justices Simpson and Hickman concur in this dissent.