

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 30, 1952

Hon. Ben Ramsey
Lieutenant Governor
Austin, Texas

Dear Sir:

Opinion No. V-1569

Re: The statutes under which
cities and towns are now
authorized to negotiate
mineral leases.

Your request for an opinion reads in part as follows.

"     .    .   .

"It has been pointed out to me that Article 1267, R.C.S., enacted in 1919, and Article 5400a, R.C.S., enacted in 1937, are in conflict in several respects; provided and only if Article 5400a applies to cities and towns. These conflicts will be readily apparent to you without my calling them expressly to your attention.

"   .   .   .   .

"May I therefore request that you officially advise me whether Article 1267 alone governs cities and towns as therein described as to the leasing of their oil or other mineral lands, or whether Article 5400a is the controlling statute, or whether both articles must be read together in order to determine the rights of a city to make a mineral lease and the proper procedure for so doing."

Article 1267, V.C.S. (Acts 36th Leg.,R.S. 1919, ch. 117, p. 183), authorizes cities and towns to lease their land for mineral development as follows:

"Cities and towns chartered or organized under the general laws of Texas, or by special Act or charter, which may own oil or mineral lands, shall have the power and right to lease such oil or mineral lands for the benefit of such town or city, but shall not lease for such purposes any street or alley or public square in said town or city, or any land therein dedicated by any person to public uses in such town or city; and no well shall be drilled within the thickly settled portion of any city or town, nor within two hundred feet of any private residence."

Article 5400a, V.C.S. (Acts 45th Leg., R.S.1937, ch. 279, p. 568), grants the same power to political subdivisions of the State of Texas as follows:

"Section 1. Political subdivisions which are bodies corporate with recognized and defined areas, are hereby authorized to lease for mineral development purposes any and all lands which may be owned by any such political subdivision.

"Sec. 2. The right to lease such lands shall be exercised by the governing board, the commission or commissioners of such political subdivision which are by law constituted with the management, control, and supervision of such subdivision, and when in the discretion of such governing body they shall determine that it is advisable to make a lease of any such lands belonging to such district or subdivision, such governing body shall give notice of its intention to lease such lands, describing same, by publication of such notice in some newspaper published in the county, having a general circulation therein, once a week for a period of three (3) consecutive weeks, designating the time and place after such publication where such governing body will receive and consider bids for such mineral leases as such governing body may determine to make. On the date specified in said notice, such governing board or body shall receive and consider any and all bids submitted for the leasing

of said lands or any portions thereof which are advertised for leasing, and in the dis-cretion of such governing body shall award the lease to the highest and best bidder submitting a bid therefor, provided that if in the judgment of such governing body the bids submitted do not represent the fair value of such leases, such governing body in their discretion may reject same and again give notice and call for additional bids, but no leases shall in any event be made except upon public hearing and con-sideration of said bids and after the notice as herein provided.

"Sec.2a. Provided that all such leases may be granted by public auction and that no leases shall be executed in any case except and unless the lessor shall retain at least one-eighth royalty, provided further that in no case shall the primary term of said lease be for more than a period of ten (10) years from the date of execution and approval thereof."

The emergency clause to Article 5400a (Acts 45th Leg., R.S.1937, ch. 279, p.568) reads as follows:

"The fact that political subdivisions of the State have lands owned, held, and used for public purposes but which purposes will not be hindered or interfered with by the development of said lands for mineral purposes, and that some of said lands have possibilities of minerals therein and that development of said lands for mineral pur-poses is necessary in order to conserve said mineral estate and prevent the loss thereof, create an emergency and an impera-tive public necessity that the Constitu-tional Rule requiring bills to be read on three several days in each House be sus-pended and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

As will be observed from the above, Article 1267 applies only to "cities and towns," while Article 5400a applies to "political subdivisions which are bodies corporate with recognized and defined areas." At the outset, therefore, some doubt arises as to whether Article 5400a should be held to include cities and towns within its reference to "political subdivisions." Many Texas decisions have stated that cities and towns are political subdivisions of the State. Payne v. Massey, 145 Tex. 237, 196 S.W.2d 493 (1946); Texas National Guard Armory Board v. McGraw, 132 Tex. 613, 126 S.W.2d 627 (1939); City of Goose Creek v. Hunnicutt, 120 Tex. 471, 39 S.W.2d 617 (1931); Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20 (1931); City of Abilene v. State, 113 S.W.2d 631 (Tex.Civ.App. 1937, error dism.). Certainly, in the light of these decisions, it is possible to interpret the phrase "political subdivisions" as including cities and towns and hence it is possible to give Article 5400a a construction whereby it applies to leases by cities and towns if we are to consider nothing more than the mere literal definition of words. We do not find it necessary, however, to decide whether cities and towns are political subdivisions within the meaning of Article 5400a. For the purpose of this opinion we will assume that they are. Thus, the question to be decided is whether, in the light of pertinent and well established legal principles, Article 5400a can properly be construed as applying to the execution of oil and mineral leases by cities and towns. We think this question must be answered in the negative.

Under the assumption that cities and towns are political subdivisions of the State, Articles 1267 and 5400a are in pari materia as to cities and towns and should be adjusted according to the following rule in 2 Sutherland, Statutory Construction, Sec. 5204 (3rd ed. 1943):

"General and special acts may be in pari materia. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling."

In Texas the above rule has been applied in many cases, among them Cole v. State, 106 Tex. 472, 474, 170 S.W. 1036 (1914). In this case Article 1591, V.C.S., enacted in 1911, gave the Texas courts of civil appeals exclusive jurisdiction over certain specified appeals. In 1913, Article 1521 was enacted giving the Supreme Court of Texas jurisdiction over cases in which errors of substance had been committed by the courts of civil appeals, and it was contended that Art. 1521 impliedly repealed the specific exclusive jurisdiction provisions of Art. 1591. The Court held that these provisions must be read as exceptions to Art. 1521 and stated the controlling rule thusly:

"Repeals by implication are never favored. Laws are enacted with a view to their permanence, and it is to be supposed that a purpose on the part of the lawmaking body to abrogate them will be given unequivocal expression. Knowledge of an existing law relating to the same subject is likewise attributed to the Legislature in the enactment of a subsequent statute; and when the later act is silent as to the older law, the presumption is that its continued operation was intended, unless they present a contradiction so positive that the purpose to repeal is manifest. To avoid a state of conflict an implied repeal results where the two acts are in such opposition. But the antagonism must be absolute - so pronounced that both cannot stand.

"Though they may seem to be repugnant, if it is possible to fairly reconcile them, such is the duty of the court. A construction will be sought which harmonizes them and leaves both in concurrent operation, rather than destroys one of them. If the later statute reasonably admits of a construction which will allow effect to the older law and still leave an ample field for its own operation, a total repugnance cannot be said to exist, and therefore an implied repeal does not result, since in such case both may stand and perform a distinct office. . . ."

Similar holdings and language by Texas courts may be found in Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269 (1944), where the Juvenile Delinquent Act was held to be subject

to certain evidentiary requirements which had previously been enacted into the Penal Code; <u>Flowers v. Pecos River R.Co.</u>, 138 Tex. 565, 186 S.W.2d 973 (1941); <u>Bishop v. Houston Independent School District</u>, 119 Tex. 403, 29 S.W. 2d 312 (1930); <u>Fortinberry v. State</u>, 283 S.W. 146 (Tex. Comm.App. 1926); <u>Culver v. Miears</u>, 220 S.W.2d 201 (Tex. Civ.App. 1949); and <u>State v. Humble Oil & Refg. Co.</u>, 187 S.W.2d 93 (Tex.Civ.App.1945). In view of this authority, it is clear that Article 1267 must be construed an an exception to Article 5400a and that cities and towns, even though they may be political subdivisions under Article 5400a, are authorized to execute mineral leases under the provisions of Article 1267.

That the above result conforms to the legislative intent is evidenced by the fact that the emergency clause of Article 5400a declares that political subdivisions own minerally rich lands and have no leasing authority. The Legislature must be presumed to have known that Article 1267 gave cities and towns the power to lease their property for mineral development at the time Article 5400a was enacted. Yet, there was no repealing clause in Article 5400a. Clearly, therefore, the Legislature could not have intended for Article 5400a to have any application to cities and towns in the leasing of their lands for oil and mineral development.

Ten years after the enactment of Article 5400a the Texas Supreme Court in <u>City of Beaumont v. Moore</u>, 146 Tex. 46, 202 S.W.2d 448 (1944), in discussing the power of cities to lease their lands, said:

"It is not disputed that the City of Beaumont has the power under its charter to contract generally, and, under its charter and Article 1267, Vernon's Ann. Civ.St., it is authorized to sell or lease its real property and to warrant the title thereto."

Moreover, in the dissenting opinion in that case, three members of the Court recognized the authority of cities and towns to lease their properties under Article 1267, saying:

"These considerations no doubt prompted the legislature to authorize cities by statute to lease city property for oil and gas. Article 1267, R.C.S."

We think that the above quoted language of the Court in the <u>Moore</u> case cannot be disregarded. Even though Article 5400a had been a part of our statutes for a decade when the <u>Moore</u> case was decided, we find that all members of the Court were looking to Article 1267, rather than 5400a, as the source of a city's authority to execute mineral leases. This language of the Court, coupled with the authorities previously discussed, substantiates the conclusion we have reached that Article 1267 is controlling in the lease of lands by cities and towns for mineral development.

You are therefore advised that in our opinion Article 1267 was not repealed by Article 5400a, and that the latter must be construed as applying to political subdivisions other than cities and towns, which, if they may be considered political subdivisions, are nevertheless controlled in their oil and gas leasing by Article 1267. Any question as to whether remedial legislation is necessary in order to clearly evidence the intent of the legislature as interpreted herein, or to change the law as we interpret it in this opinion, is a matter of discretion for the legislature and not this office.

## SUMMARY

Article 1267, V.C.S. (Acts 36th Leg., R.S. 1919, ch.117, p. 183), which authorizes cities and towns to issue mineral leases, was not repealed by Article 5400a, V.C.S. (Acts 45th Leg., R.S. 1937, ch. 279, p. 568), which authorizes political subdivisions of the State to accept bids on mineral leases, but must be construed as an exception to the later statute applying to cities and towns.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

Charles D. Mathews
First Assistant

By _____

Price Daniel
Attorney General

Thomas Black
Assistant

TB:bt