John M. SCHAEFER et al., Appellants,

v.

Neal BONNER, Appellee.

No. 14984.

Court of Civil Appeals of Texas, San Antonio.

June 9, 1971.

Rehearing Denied July 14, 1971.

Lang, Cross, Ladon, Boldrick & Green, San Antonio, for appellants.

Clemens, Knight, Weiss & Spencer, Gardner S. Kendrick, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellee.

**218**

BARROW, Chief Justice.

Appellee, Neal Bonner, brought this suit to recover damages from appellants, John M. Schaefer, Sam H. Schaefer, Mark E. Watson, Jr., and Jax Poteet, hereinafter sometimes referred to as the Schaefer Group, for breach of the covenant against encumbrances contained in a General Warranty Deed and for a declaratory judgment declaring the status of the sublease of defendant, Meyer Supply Company, Incorporated. The trial court rendered an interlocutory summary judgment declaring the sublease binding on Bonner. Judgment was subsequently entered on a partial jury verdict whereby the interlocutory summary judgment was made final, and Bonner recovered judgment from the Schaefer Group for $17,975.11, less an offset of $2,006.57 for taxes paid by the Schaefer Group. Appellants have duly perfected this appeal as to Bonner only, although a reply brief was filed herein by Meyer Supply Company.

The facts, although largely undisputed, are very complex. Prior to 1962, Equipment Acceptance Corporation constructed commercial improvements on its property at 1238 West Laurel Street, San Antonio, Texas, for use by Texas Industrial Products Company (TIPCO). Both corporations were controlled by Carl Fennyvessy. The improvements were financed with a loan of $125,000.00 from Travis Savings and Loan Association, secured by a deed of trust. The loan payments were not timely made, and an agreement was subsequently made with Fennyvessy whereby Travis Savings and Loan foreclosed on the property, but TIPCO stayed in possession of the premises as a tenant. On July 15, 1965, Travis Savings and Loan sold the real estate to John M. Schaefer under a warranty deed with vendor's lien to secure a note in the amount of $125,000.00, payable $1,387.82 per month. Schaefer conveyed said property on the same date to the Schaefer Group in undivided shares.

On July 23, 1965, Schaefer and TIPCO entered into a five-year lease agreement ending on July 14, 1970, whereby TIPCO leased the premises (which it was still occupying) for the sum of $1,450.00 per month and agreed to pay all ad valorem taxes, utilities and insurance. The purchase and lease agreements were based on a written agreement entered into on July 1, 1965, by Schaefer and Fennyvessy, which provided: Schaefer would purchase the property from Travis Savings and Loan; Fennyvessy, as nominee for TIPCO, agreed to lease said building; the sublease rental of Meyer Supply Company would be paid direct to Schaefer; Fennyvessy was given a five-year option to purchase the building for $145,000.00 in consideration of a $10,000.00 deposit, which would be forfeited in the event said option was not exercised or if the monthly rent became in default.

TIPCO did not need all the space in the building, and on July 27, 1965, it entered into a sublease with Meyer Supply Company [1] whereby the latter subleased approximately 50 per cent of the building for a five-year term ending August 31, 1970, at $500.00 per month including utilities. It is seen that the sublease expired about 45 days after the original lease and also contains an option to renew for an additional five years upon 90 days notice. The sublease provides, however, that it is subject to all of the terms and conditions of the prime lease.

On August 11, 1965, and apparently at the request of Fennyvessy, Schaefer wrote a letter to Meyer Supply Company accepting and approving its sublease of a part of the premises from TIPCO. This letter, hereinafter referred to as the "survival agreement" provides: "In the event Texas Industrial Products Company defaults on its agreement with me or goes out of business for any reason, then I agree to honor all of the terms, conditions and provisions of the lease above referred to."

---

1. Obviously such sublease was contemplated by Fennyvessy and Schaefer prior to July 1, 1965.

In June, 1966, Bonner and three associates, hereinafter referred to as the Bonner Group, purchased all the Class A or voting stock in TIPCO from Fennyvessy and the minority stockholders associated with Fennyvessy. One of Bonner's associates dropped out shortly thereafter, and a second dropped out in about three months. The other associate, Chaunce A. Beane, Jr., conveyed all his interest to Bonner on January 1, 1970, and Bonner is the sole appellee herein. TIPCO supplies industrial tools to contractors. Bonner testified that it was purchased because it had a large income tax loss carry-over, and he thought it had great potential with the defense effort expanding in the Far East.

Bonner testified that his group considered purchase of the real estate from the outset because of the high rental paid under the TIPCO lease.[2] On June 24, 1966, Schaefer Group executed a General Warranty Deed conveying the property to the Bonner Group for the sum of $130,000.00, including assumption of the unpaid note to Travis Savings and Loan on which $116,000.00 remained unpaid. This warranty deed made no mention of the lease to TIPCO, or its sublease to Meyer Supply Company. Nor does it mention the $10,000.00 option deposit made by Fennyvessy on behalf of TIPCO, although same has now been forfeited to the Schaefer Group.

TIPCO did not prosper any better under the management of the new owners of its stock than it did under Fennyvessy, and in fact, it got deeper in debt. Although TIPCO did not need all the space, Bonner was not satisfied with the low rent paid by Meyer Supply Company under the terms of the sublease. Admittedly, he would have profited by its termination. On May 12, 1967, the Bonner Group, as sole stockholders of TIPCO, voted to liquidate said corporation. All books and records of the corporation were moved to Bonner's law office in Harlingen, while the inventory was being liquidated.

By September 14, 1967, the inventory liquidation of TIPCO was completed; and, on this date, Bonner notified Meyer Supply Company that TIPCO had breached its lease contract and, under the terms of the sublease, the latter was also terminated. Bonner advised Meyer Supply Company that he would be happy to negotiate a new lease with Meyer Supply Company, but any holding over after October 1, 1967, would be at a rental of $1,500.00 per month. In response to Bonner's letter of September 14, 1967, Meyer Supply Company advised Bonner that its sublease remained in full effect under the "survival agreement" contained in Schaefer's letter of August 11, 1965. Meyer Supply Company refused to vacate, subsequently exercised its option for the five-year extension, and has timely tendered the monthly rental of $500.00 each month. All were returned by Bonner with the exception of a check for $500.00 received and deposited by him on October 6, 1967.

The first trial of this case ended in a mistrial when the jury was unable to agree as to the damages sustained by Bonner as a result of the "survival agreement." Six issues were submitted to the jury at the second trial, and the verdict was accepted by the trial court, although the jury was unable to agree on Questions 5 and 6. The jury found: 1. The reasonable rental value of the property occupied by Meyer Supply Company from October 1, 1967, to August 31, 1975, is $700.00 per month. 2. The reasonable cash market value of the entire property on June 24, 1966, without the "survival agreement" is $135,000.00. 3. The reasonable cash market value of said property with the "survival agreement" is $125,000.00. 4. Bonner did not know of the existence of the "survival agreement" or of facts which would have led to his discovery of same on or before June 24, 1966. The jury did not answer: 5. Did Bonner intend to agree that Meyer Supply Company could occupy the space when he deposited its rental check on October 6,

---

2. This rental would result in full payment of the purchase price in less than 10 years.

1967? 6. Did Bonner waive any claim for breach of warranty by such intention?

Appellants, Schaefer Group, assert eight points of error on this appeal. Under their first four points, it is urged that the evidence established as a matter of law that since Bonner individually owned the real property and controlled all the stock in TIPCO, he is precluded from denying validity of the sublease; and therefore, Meyer Supply Company's right to the premises was not dependent upon the "survival agreement." They urge that, in any event, such defense was raised by pleadings and evidence; and therefore, the trial court erred in refusing to submit the requested issues as to whether TIPCO was the alter ego of Bonner. Under their fifth point, appellants assert that the "survival agreement" was not binding on Bonner. Under the sixth point, appellants assert that the trial court erred in not declaring a mistrial because of the jury's failure to answer Questions 5 and 6. The final two points relate to the measure of damages applied by the trial court.

We must recognize at the outset that since no appeal has been perfected as to Meyer Supply Company, that part of the judgment declaring the sublease binding and enforceable in accordance with the terms and provisions of the sublease and the "survival agreement" is now final. Article 1297, Vernon's Annotated Civil Statutes, provides in part that the unrestricted use of the words "grant" or "convey" in a conveyance, as are contained in the deed from Schaefer Group to Bonner Group, implies a covenant that such estate is at the time of execution of such conveyance free from encumbrances. City of Beaumont v. Moore, 146 Tex. 46, 202 S. W.2d 448 (1947); Ragsdale v. Langford, 358 S.W.2d 936 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.); Latham v. Miller, 250 S.W.2d 302 (Tex.Civ.App.—Austin 1952, mandamus overruled). Therefore, the "survival agreement" which was not excepted from the Schaefer Group's warranty to the Bonner Group constituted an encumbrance against Bonner Group's title.

Much of the evidence offered at the trial related to the question of whether Bonner Group knew or should have known of the existence of the "survival agreement" at the time the property was conveyed to them by the Schaefer Group. Certainly, many circumstances should have put them on inquiry. Furthermore, Bonner Group had the duty as a matter of law to inquire of Meyer Supply Company as to its right to possession, since it was in possession of the premises, as to any title or interest it had in the land. Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459 (1904); Aldridge v. North East Independent School District, 428 S.W.2d 447 (Tex.Civ.App.— San Antonio 1968, writ ref'd). Therefore, we can assume for the purpose of this appeal that Bonner Group should have known of the existence of the "survival agreement" at the time the property was purchased.

The legal effect of knowledge of the encumbrance was considered by the Supreme Court in City of Beaumont v. Moore, supra. It was there held (202 S. W.2d 448 at 455): "In so far as the warranty is concerned it is not material that Moore possessed or was charged with knowledge of the servitude or the limitations of the city. His rights under the warranties arise not from any independent knowledge he possessed, or with which he was charged, but solely from the language of the deed and the warranties included and read into it." Accordingly, it was held that vendee's knowledge of the existence of an encumbrance does not affect his right to recover damages on the breach of the covenant, but may be shown in mitigation of damages.

Appellants urge that it would have no liability for the encumbrance created by the "survival agreement" since Bonner would have no right in any event to terminate the sublease to Meyer Supply Compa-

ny. It is urged that Bonner would have been precluded from denying validity of the sublease and Meyer Supply Company's option upon purchasing the property, because he also controlled TIPCO as his "alter ego." In Furneaux v. Webb, 33 Tex. Civ.App. 560, 77 S.W. 828 (Tex.Civ.App. 1903, writ ref'd), it was held that a lessee would be precluded from invoking a "subject to sale" clause to cancel the sublease if he subsequently purchased the property himself. The court said that it would not do to hold that the lessee who had subleased the lands in controversy subject to sale by the owners, could themselves become the purchasers, and thereby put an end to the sublease and oust their tenants. See also: Green v. Montgomery, 211 S.W. 471 (Tex.Civ.App.—El Paso 1919, no writ).

Appellants urge that under this rule Bonner should not be permitted to oust Meyer Supply Company after exercising his control of the stock of TIPCO to forfeit its lease. To apply this rule here, one would have to first disregard the corporate entity of TIPCO. In any event, however, such rule would only have application if Meyer Supply Company sought to prevent the termination of its sublease. It would not have application to the question of whether the property sold Bonner Group by Schaefer Group was encumbered by the "survival agreement." The breach occurred when the encumbered property was sold, and subsequent events could only affect the amount of damages. City of Beaumont v. Moore, supra. Therefore, appellants' first four points are without merit.

■ The unanswered issues of whether Bonner had ratified the Meyer Supply Company sublease by acceptance of the rental after the TIPCO prime lease had been terminated are immaterial for the same reason. Such defense might properly be invoked by Meyer Supply Company to prevent a termination of the sublease but they will not establish a defense in this

suit for breach of the covenant against encumbrances. Accordingly, the trial court did not err in refusing to grant a mistrial because of the jury's failure to agree to Questions 5 and 6.

■ The final points herein relate to the measure of damages. The trial court submitted issues as to the difference in the market value of the property with and without the "survival agreement." It also submitted the reasonable rental value of the premises leased by Meyer Supply Company during the remainder of the term thereof, including the option which had been timely exercised by said subleasee before the trial. Judgment was rendered on the difference between the rasonable rental value and the rental agreed to be paid by Meyer Supply Company under the terms of the sublease.

The question of the measure of damages recoverable for an encumbrance was considered in City of Beaumont v. Moore, supra. It was there said: "The covenant [against encumbrances] is separate and distinct from the warranty of title; it is intended to protect the grantee against rights or interests in third persons, which, while consistent with the fee being in the grantor, diminish the value of the estate conveyed. Such a covenant may be styled one of indemnity, promising compensation for damages arising from some outstanding right or interest of a third person; an engagement that the grantor's title is unincumbered, and a covenant in praesenti, which is breached, if at all, upon the execution and delivery of the deed, though damages may not arise until a later date." (202 S.W.2d 448 at 453)

In Ragsdale v. Langford, supra, the court affirmed a judgment for the rental value of commercial property which was encumbered by an unrecorded lease. The court said (358 S.W.2d 936 at 938): "Where property is purchased for rental purposes and there is an outstanding lease which constitutes a breach of the covenant against encumbrances, the measure of dam-

**222**

ages is the value of the use of the premises which is ordinarily the rental value during the remainder of the unexpired term of the lease. 21 C.J.S. Covenants § 145c." See also 61 A.L.R., Anno.—Damages for Breach of Covenants of Title, pp. 10, 70; 20 Am.Jur.2d, Covenants, Conditions, Etc., Section 146, p. 705.

Appellants urge that use of the reasonable rental value as the measure of damages is too speculative in that it is based on a future loss of possession, and there is no certainty that Meyer Supply Company will occupy the premises for the entire term of the sublease. In this connection, appellants tendered a letter with their motion for new trial wherein Meyer Supply Company offered, after the trial, to vacate said premises upon payment to them of the sum of $3,750.00. The same uncertainty as to future use would exist in determining almost any measure of damages in this case. Appellants concede that in determining the difference in the market value with and without the "survival agreement" as urged by them as the proper measure of damage, the jury could properly consider the rental value which would include the possibility that Meyer Supply Company might vacate the premises before expiration of sublease term. Likewise, economic conditions could change and thereby affect the rental value. These matters, if introduced in evidence could be considered by the jury. It is seen that the jury found the reasonable rental value to be substantially less than the value placed on same by Bonner's expert witness. Here the property conveyed to Bonner, although conveyed with a valid fee simple title, was encumbered by the sublease which prevented Bonner's full use of this part of the premises. His damage is shown by the loss, if any, in reasonable rental value. We conclude that the trial court did not err in awarding Bonner damages based on the jury findings of the reasonable rental value for the period protected by the "survival agreement" less the sum agreed to be paid by Meyer Supply Company under terms of the sublease.

 As an alternative point regarding the offer by Meyer Supply Company to vacate the premises, appellants urge that the trial court erred in not granting them a new trial based on the newly discovered evidence by reason of letter from Meyer Supply Company offering to vacate the premises. There were considerable negotiations for settlement among all parties after the trial of the case, and it is not clear if Meyer Supply Company's offer to vacate was merely an offer to compromise. In any event, the trial court did not abuse its discretion in not granting a new trial for this newly discovered evidence.

We have considered all of appellants' points of error in the light of the record of this case, and same are without merit. The judgment of the trial court is affirmed.