TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00501-CV






Hugh Bob Spiller, Appellant



v.



Fidelity National Title Insurance Company, Appellee






FROM THE DISTRICT COURT OF CONCHO COUNTY, 119TH JUDICIAL DISTRICT


NO. 3207-B, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING 







 We consider in this appeal the effect of a warrantee's settling an adverse claim to
land covered by warranties of title given in a deed of real property. The trial court rendered a
summary judgment against the warrantor, appellant Hugh Bob Spiller, ruling that his refusal to
defend the warrantee estopped him from contesting the reasonableness of the settlement negotiated
by the warrantee's title insurer, appellee Fidelity National Title Insurance Company. We will
reverse the judgment of the trial court and remand the cause for further proceedings.


THE CONTROVERSY

 In 1987, Thomas Rezzlle conveyed to his son Richard Rezzlle the land in question. 
To finance the purchase, Richard Rezzlle borrowed $50,000 from Junction National Bank, secured
by a first lien given in a deed of trust, and $24,580 from Thomas secured by a second lien. The
bank sold its note to Spiller. On May 1, 1990, Spiller foreclosed his lien on the property. Spiller
and Thomas Rezzlle purchased the property from a substitute trustee. Spiller and Thomas Rezzlle
conveyed the land on June 4 to Lee Bell by deed of general warranty, after which Bell subdivided
the land and sold some of the lots. Bell obtained title insurance from Fidelity, and some of the
remaining lot owners obtained insurance from Alamo Title Company.

 In 1994, Richard Rezzlle and Sue McShan sued Spiller, Thomas Rezzlle, Lee Bell,
thirteen lot owners, and the substitute trustee under the deeds of trust. Richard Rezzlle alleged
that defects in the foreclosure proceedings rendered the foreclosure sale void. McShan claimed
that, as Spiller's wife when he acquired it, she owned a community interest in the note. McShan
further asserted that in 1988 the court hearing the divorce proceedings between her and Spiller
temporarily enjoined disposition of the note and that the court later awarded the entire note to her. 
 McShan and Richard Rezzlle prayed that the deed to Bell be canceled and title to the land awarded
to them.

 Spiller initially appeared in the lawsuit pro se, but later was represented by counsel. 
Alleging breach of the warranties made in the deed to him, Bell cross-claimed against Spiller and
Thomas Rezzlle. Fidelity intervened, as subrogee of Bell's rights, to sue Spiller for breaching his
covenant of warranty of title and covenant against encumbrances. Fidelity also claimed to be the
assignee of the claims of seven of the lot owners as well as all claims Alamo held by subrogation. 
Fidelity alleged that it paid to defend and settle the lawsuit against Bell and that it was entitled to
recover the $60,000 paid to release claims against the land plus $13,222.40 in attorney's fees to
defend the title. At the request of McShan and Richard Rezzlle, the trial court dismissed with
prejudice their claims against all defendants, leaving only the cross-claims pending.

 The trial court granted Fidelity's motion for summary judgment, rendering a final
judgment that Fidelity recover $73,222.40 from Spiller.


DISCUSSION AND HOLDINGS

 In his first point of error, Spiller asserts that Fidelity's theory of estoppel cannot
support the judgment. Fidelity moved for summary judgment on the ground that Spiller's refusal
to defend Bell against McShan and Richard Rezzlle's claims estopped him from asserting that they
were without merit and that the amount Fidelity and Alamo paid to settle them was unreasonable. 
Because the question in this case is one of law, we review the summary-judgment record to
determine whether it establishes conclusively Fidelity's right to judgment. Gibbs v. General
Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). (1)

 In the deed conveying the land to Bell, Spiller and Thomas Rezzlle bound
themselves "to warrant and forever defend the premises unto the grantees against every person
whomsoever lawfully claiming or to claim the same or any part thereof." By this covenant, Spiller
warranted that he had not conveyed the same estate to any person other than Bell and that the
property was free from encumbrances. Compton v. Trico Oil Co., 120 S.W.2d 534, 537 (Tex.
Civ. App.--Dallas 1938, writ ref'd). The covenant of general warranty is termed a contract of
indemnity, its purpose being to indemnify the warrantee against loss he may sustain by a failure
in the warrantor's title. City of Beaumont v. Moore, 202 S.W.2d 448, 453 (Tex. 1947). 

 By using the words "grant" and "convey" in the deed to Bell, Spiller additionally 
warranted that the land he sold was not encumbered. Tex. Prop. Code Ann. § 5.023(a) (West
1984). The covenant against encumbrances is distinct from the warranty of title and is intended
to protect the grantee against rights or interests in third persons that, while consistent with the fee
being in the grantor, diminish the value of the estate conveyed. Moore, 202 S.W.2d at 453. Like
the covenant of warranty of title, however, the covenant against encumbrances is one of
indemnity, promising compensation for damages that arise from an outstanding right or interest
in a third person. Id.

 To prevail on a claim for breach of warranty of title, the warrantee must show that
his title has failed and that he has been evicted from the land. Schneider v. Lipscomb County Nat'l
Farm Loan Ass'n, 202 S.W.2d 832, 834 (Tex. 1947); Freeman v. Anderson, 119 S.W.2d 1081,
1083 (Tex. Civ. App.--Waco 1938, no writ). An eviction may be either actual or constructive;
if the latter, the warrantee must prove that paramount title has been positively asserted against him
and that the asserted title is in fact paramount. Schneider, 202 S.W.2d at 834; Whitaker v. Felts,
155 S.W.2d 604, 606 (Tex. 1941). A warrantee cannot base a constructive eviction merely on
his voluntary act; if he cedes to an opposing claim of title that is inferior to his own, he cannot
hold the warrantor liable in damages. Whitaker, 155 S.W.2d at 606; Rancho Bonito Land & Live-Stock Co. v. North, 45 S.W. 994, 996 (Tex. 1898). Having ceded to McShan and Richard
Rezzlle's claims to paramount title by settling, Bell must rely on a constructive eviction. Thus
before Spiller could be held liable for a breach of warranty, he would ordinarily be entitled to an
adjudication that McShan and Richard Rezzlle held superior title to the land. Johns v. Hardin, 16
S.W. 623, 623 (Tex. 1891). E.g., Sherman v. Piner, 91 S.W.2d 1185, 1185 (Tex. Civ.
App.--Eastland 1936, no writ).

 A claim for breach of the covenant against encumbrances arises when the
covenantee is either dispossessed by foreclosure or compelled to discharge the encumbrance. 
Seibert v. Bergman, 44 S.W. 63, 63-64 (Tex. 1898); Wolff v. Commercial Standard Ins. Co., 345
S.W.2d 565, (Tex. Civ. App.--Houston [1st Dist.] 1961, writ ref'd n.r.e.); Hill v. Provine, 260
S.W. 682, 683 (Tex. Civ. App.--El Paso 1924, writ dism'd). Spiller's liability for breach of the
covenant against encumbrances depended on a showing that Bell was legally obligated to discharge
the encumbrance. See Johns, 16 S.W. at 623.

 Fidelity contends that Spiller is estopped from litigating the merits of the title claims
and the reasonableness of the settlement because he refused to defend Bell against the adverse
claims. Fidelity supports its contention with the affidavit of the attorney then representing Bell. 
The attorney states in his affidavit that when he asked Spiller to defend Bell's title, Spiller
demanded that Bell in return agree to hold him harmless from any claim for breach of warranty. 
Bell rejected this demand, according to the attorney, and Spiller refused to defend Bell. Fidelity
then negotiated a settlement by which McShan and Rezzlle released their claims to title and
nonsuited Bell in return for $50,000 from Fidelity and $5,000 from Alamo. We will assume that
Spiller refused to defend Bell's title to the land. (2)

 The consequences of Spiller's refusing to defend Bell and Bell's settling the adverse
claims are governed by principles of indemnity. When an indemnitor such as Spiller denies that
he owes any obligation under an indemnity contract, he waives the right to a judicial determination
of the indemnitee's liability to an adverse claimant. Gulf, Colo. & S. F. Ry. v. McBride, 322
S.W.2d 492, 495 (Tex. 1958); Mitchell's, Inc. v. Friedman, 303 S.W.2d 775, 779 (Tex. 1957),
overruled on other grounds, Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex.
1987). An indemnitee such as Bell, who cannot secure a defense by his indemnitor and who then
settles the claim without an adjudication of liability, assumes the burden to prove facts that might
have rendered him liable to the claimant as well as the reasonableness of the amount he paid. 
Firemen's Fund Ins. Co. v. Commercial Standard Ins. Co., 490 S.W.2d 818, 824 (Tex. 1972),
overruled on other grounds, Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex.
1987); Mitchell's, Inc., 303 S.W.2d at 779; H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872,
879 (Tex. App.--Corpus Christi 1996, no writ). The indemnitee must prove that, from his
standpoint, the settlement was made in good faith and was reasonable and prudent under the
circumstances. Firemen's Fund Ins. Co., 490 S.W.2d at 824; Mitchell's, Inc., 303 S.W.2d at
779; Wolff, 345 S.W.2d at 568. Thus, while Spiller's refusal to defend Bell constituted a waiver
of Spiller's right to have Bell's liability adjudicated, it did not estop Spiller from requiring Bell,
or Bell's subrogee Fidelity, to prove Bell's potential liability and the reasonableness of the
settlement with McShan and Richard Rezzlle.


CONCLUSION

 We conclude that Bell's settlement imposed on him the burden to prove its
reasonableness. Fidelity's assertion that Spiller is estopped to contend that the settlement was
unreasonable misconstrues this burden. We therefore sustain point of error one. In light of our
disposition of this point, we need not address points two and three. Because Fidelity was not
entitled to summary judgment on the ground of estoppel, we reverse the trial court's judgment
and remand the cause for further proceedings.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Remanded

Filed: October 15, 1998

Do Not Publish
1. Fidelity moves this Court to disregard the transcription of the hearing on the summary-judgment motion as well as two affidavits filed in opposition to the motion after the judgment was
signed. We sustain the motion. Tex. R. Civ. P. 166a(c).
2. We decline to address Spiller's contention that his defense against the adverse-title claims,
initially pro se and later through an attorney, fulfilled his duty to defend Bell's title.



1891). E.g., Sherman v. Piner, 91 S.W.2d 1185, 1185 (Tex. Civ.
App.--Eastland 1936, no writ).

 A claim for breach of the covenant against encumbrances arises when the
covenantee is either dispossessed by foreclosure or compelled to discharge the encumbrance. 
Seibert v. Bergman, 44 S.W. 63, 63-64 (Tex. 1898); Wolff v. Commercial Standard Ins. Co., 345
S.W.2d 565, (Tex. Civ. App.--Houston [1st Dist.] 1961, writ ref'd n.r.e.); Hill v. Provine, 260
S.W. 682, 683 (Tex. Civ. App.--El Paso 1924, writ dism'd). Spiller's liability for breach of the
covenant against encumbrances depended on a showing that Bell was legally obligated to discharge
the encumbrance. See Johns, 16 S.W. at 623.

 Fidelity contends that Spiller is estopped from litigating the merits of the title claims
and the reasonableness of the settlement because he refused to defend Bell against the adverse
claims. Fidelity supports its contention with the affidavit of the attorney then representing Bell. 
The attorney states in his affidavit that when he asked Spiller to defend Bell's title, Spiller
demanded that Bell in return agree to hold him harmless from any claim for breach of warranty. 
Bell rejected this demand, according to the attorney, and Spiller refused to defend Bell. Fidelity
then negotiated a settlement by which McShan and Rezzlle released their claims to title and
nonsuited Bell in return for $50,000 from Fidelity and $5,000 from Alamo. We will assume that
Spiller refused to defend Bell's title to the land. (2)

 The consequences of Spiller's refusing to defend Bell and Bell's settling the adverse
claims are governed by principles of indemnity. When an indemnitor such as Spiller denies that
he owes any obligation under an indemnity contract, he waives the right to a judicial d