**CITY OF ROBSTOWN, Appellant,**

v.

**Alvino G. BARRERA, et al., Appellees.**

**No. 13–89–010–CV.**

Court of Appeals of Texas, Corpus Christi.

July 3, 1989.

Rehearing Dismissed Aug. 14, 1989.

Juan Perales, Robstown, for appellant.

Francis I. Gandy, Jr., Faires P. Wade, Corpus Christi, Thomas K. Anson, Hays & Anson, Austin, for appellees.

Before BENAVIDES, UTTER and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

This is an appeal from an injunction entered by Judge Mike Westergren against the City of Robstown (City) and in favor of appellees, trustees for the utility system of the City of Robstown. (Board). We affirm.

A brief history of the relationship between the City and the Board is necessary. The City of Robstown is a home-rule city which owns electric, natural gas, and sewer utilities. Under Tex.Rev.Civ.Stat.Ann. art. 1115 (Vernon 1963), management and control of the utility system may be placed in the hands of a Board of Trustees. The 1948 City Charter of the City of Robstown put management and control in a Board of Trustees in accordance with Article 1115. The Charter provides that the Board be comprised of five members, one of whom shall be the Mayor of the City of Robstown. The outstanding bond ordinances have not altered this organizational scheme. The Charter further provides that the "management and control of any public utility owned by the City of Robstown, together with all properties incident thereto, shall be, and is hereby placed in the hands of a Board of Trustees.... The duties of the Board include the duty to prescribe rules, employ personnel, fix compensation, employ legal counsel, and purchase all material, equipment and supplies necessary for the system to render adequate and efficient service."

The City originally filed a suit for injunction against the Board members individually and in their capacity as members of the Board of Trustees of the City's utility system. The City contended that the Board members were misapplying and spending public funds in contravention of the City's charter, ordinances, statutes, as well as the State and Federal Constitutions. There-

after, the Board counterclaimed, seeking a declaration that it had authority to institute and maintain a suit, an interpretation of ordinances, and an invalidation of ordinances enacted by the City which pertained to them. After hearing the case, the trial court determined that the Board of Trustees had the power to sue and be sued in its representative capacity. The trial court's order also prohibits the City from interfering with the management, control, and operation of the utility system and declares certain ordinances invalid as to the Board.

By its points of error, the City argues that the trial court erred in granting the injunction because the Board did not have the capacity to sue, erred in overruling its plea to the jurisdiction because the court did not have jurisdiction of the parties, and erred in denying the injunctive relief sought by the City.

A common thread which runs through each of the City's points and the thrust of the City's points of error two and three is that the Board did not have the capacity to sue. The City first argues that, as an agent of the City, the Board is delegated only proprietary functions and cannot exercise its power to sue which is a governmental function. They cite the case of *Guadalupe–Blanco River Authority v. Tuttle*, 171 S.W.2d 520 (Tex.Civ.App.—San Antonio 1943, writ ref'd w.o.m.). In *Tuttle*, a board of trustees of a utility district sought injunctive relief from a contract entered into between the City of San Antonio and two river authorities. The board of trustees, in *Tuttle*, made it clear that it did not sue as individuals, or citizens, or taxpayers, nor on behalf of the city or in any capacity other than as board members. The San Antonio Court of Appeals reversed an injunction rendered in the utility board's favor, stating that the board was given no express authority as a board to sue or be sued in connection with their management of the system and the power to maintain the demands upon which injunctive relief was granted cannot be implied from the mere power to control and operate the property on behalf of its owner. *Id.* at 521. The Court determined that the board members

were agents of the City and their authority was limited to that conferred by contract. *Id.* In other words, the board in *Tuttle* had the power to control and operate the property, but did not have the authority to interject itself into the contractual relationships between its owner, City of San Antonio, and another concerning the property.

*Tuttle* is clearly distinguishable from this case and is not controlling. In *Tuttle,* the board sought to declare a contract between the city and a river authority invalid. The *Tuttle* Court found such an action to be outside the board's authority to control and operate the property. In the case at bar, the City originally brought suit against the board members, individually and in their capacity as trustees, claiming that the Board was engaged in unauthorized expenditures. The Board responded by filing a counterclaim requesting that the trial court declare management and control of the utility system in the Board and declare invalid the city ordinances which allegedly would interfere with that control. The affirmative injunctive relief involved, among other items, a request to prohibit the City from disallowing utility expenditures, prohibiting the City from requiring the transfer of funds, and prohibiting the City from reducing rates without reasonable notice of a rate hearing.

■ By both the declaratory and injunctive relief sought in this case, the Board sought to declare both rights and relief from the City, as opposed to interfering with the City's right to contract with a third party. The rights sought to be declared involved only the Board vis-a-vis the City. It is inconceivable to us that the City could bring suit against the Board without the accompanying right on the Board's part to defend such a suit and have declared, in effect, what the City sought by its original suit.

Appellees cite the cases of *Board of Trustees of the City of Eagle Pass Water Works System v. Deer Run,* 619 S.W.2d 609, 610–611 (Tex.Civ.App.—San Antonio 1981, no writ) (*Deer Run I*) and *Board of Trustees of The City of Eagle Pass Water Works System v. Deer Run,* 616 S.W.2d 337, 339 (Tex.Civ.App.—San Antonio 1981, no writ) (*Deer Run II*), as authority for their position that appellees had the capacity to sue. In *Deer Run I,* the Court held that the ordinance embodying the contract grants the Board the right to manage and control the water system and authorizes the Board to sue and be sued. *Deer Run II,* 616 S.W.2d at 339. In *Deer Run II,* the utility board appealed their dismissal from a case claiming they were a necessary party. The Court of Appeals held that the Board could properly bring suit for declaratory relief and the trial court erred in proceeding to judgment it its absence.

We believe the *Deer Run* cases are analogous to the one at bar. It is only logical that the Board, created by statute and elected by the citizenry, should be able to come to the Court for relief to declare its responsibilities and rights and seek protection of those powers entrusted to it by the city charter. The fact that the city charter does not specifically give the Board the power to sue does not preclude the Board from responding affirmatively to an action brought against it by the City. The Board was not exercising a "governmental function belonging only to the City" when it chose to defend the City's suit against it. It simply sought a declaration of the rights that it has pursuant to the city charter and applicable law as an elected body of the City of Robstown. The fact that the Board is delegated only proprietary functions does not prohibit the Board from bringing suit to determine what those functions entail. Appellant's second and third points are overruled.

■ By its first point, the City argues that the trial court erred in denying their injunctive relief with regard to signing checks. The argument specifically is that the City Treasurer of the City of Robstown was to be the treasurer of the Board, and the system of checks and balances broke down when the city treasurer became the superintendent of the Board. The City contended that the evidence presented by the City of Robstown and the testimony of the superintendent demonstrated that the Board was in violation of the ordinances of

the City of Robstown, the Local Government Code and the Depository Fund Act.

The Board was created by the City Charter of 1948. There is nothing in the charter to require signatures by the city treasurer. The charter vests management and control of the City's utilities and their properties, including money, in the Board's hands. At the hearing on the merits, Roy Gutierrez, the superintendent of the Board, testified that the utility system had its funds on deposit at the Bank of Robstown for 20 or 30 years. The Utility System maintains four basic accounts. Gutierrez said that they require three signatures on their checks. Two of the current signatures were the mayor, Julio Garza, and Bernardo Sandoval, the City Secretary. The other three were the assistant superintendent and two board members. Gutierrez claimed that the mayor and city secretary were signatories because of courtesy. The other portions of the record cited as evidence by the City in support of its position are from a hearing held on a temporary restraining order, which while before us in the record, were not introduced or incorporated into the trial on the merits. Since such evidence was not before the court below in the trial on the merits, we cannot now consider such evidence in this appeal. Regardless, there was evidence before the trial court to deny appellant's injunction, and the City did not establish as a matter of law that the Board had violated either the City Charter, the government code or the Depository Fund Act.

Point one is overruled.

The judgment of the trial court is affirmed.