OPINION

 

No. 04-07-00325-CV

 

GALLAGHER
HEADQUARTERS RANCH DEVELOPMENT, LTD.,

Christopher Hill, and Julie Hooper,

Appellants

 

v.





CITY
OF SAN ANTONIO,

City Public Service, and San Antonio Water System,

Appellees





From the 225th Judicial District Court, Bexar County, Texas

Trial Court No. 2005-CI-01377

Honorable David A. Berchelmann, Jr., Judge
Presiding





Opinion by:     Phylis J. Speedlin, Justice

Sitting:                        Alma L. López, Chief Justice

Phylis J. Speedlin, Justice

Rebecca
Simmons, Justice

Delivered and Filed: July 23, 2008

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Gallagher Headquarters Ranch Development, Ltd.,
Christopher Hill and Julie Hooper (collectively referred to as
"Hill") appeal the trial court's summary judgment in favor of the defendants,
the City of San Antonio, City Public Service, and San Antonio Water System
(collectively, the "City"). The underlying lawsuit concerns the
City's placement of an electrical transmission line across open space park
land. The land was acquired by the City as an approved venue project and funded
through a venue tax. Hill brought several injunctive and declaratory judgment
claims against the City, but his appeal is based only on his claim that the
City breached its "contract with the voters." Because we are
constrained by the plain language of section 334.041(b) of the Local Government
Code, which grants the City broad authority to convey or otherwise dispose of
an interest in an approved venue project, we affirm the trial court's judgment. (1) 

Factual and Procedural
Background

On May 6, 2000, City of San Antonio voters
approved Proposition 3 which authorized an additional 1/8 of 1% sales and use
tax, or "venue tax," to fund the City's acquisition of land for use
as linear parks along Salado and Leon Creeks and as open space parks over the
Edwards Aquifer Recharge Zone; the project was designated an "approved
venue project" under Chapter 334 of the Texas Local Government Code. In
February 2002, using funds from the Proposition 3 venue tax, the City purchased
a portion of the Mayberry Ranch on the west side of Highway 211. In October
2003, using Proposition 3 venue tax funds, the City purchased the Chris Hill
Tract - an unimproved 710 acre tract on the west side of Highway 211 which lies
entirely in the Edwards Aquifer Recharge Zone.

In early 2004, the City granted the San Antonio
Water System (SAWS) a conservation easement in perpetuity on the Chris Hill
Tract, restricting the development and use of the property to low impact human
activities like hiking and camping, and related maintenance and infrastructure,
and prohibiting any residential, commercial or industrial use. Also in early
2004, after considering other alternatives to address increased demand for
electricity in the hill country, City Public Service (CPS) and the Lower
Colorado River Authority (LCRA) proposed constructing a 345,000 volt electrical
transmission line from the LCRA's Cagnon
substation to CPS's Kendall
substation (the "Project"). As proposed, the transmission line would
run along the edge of the Mayberry and Chris Hill Tracts following an existing
right-of-way adjacent to Highway 211, and would require placement of up to five
17-story transmission towers. In January 2005, despite the City Planning Commission's
rejection of the placement of the Project across Proposition 3 land, the City
Council approved Ordinance 100326, granting CPS a limited easement over the two
Proposition 3 tracts for purposes of constructing, maintaining and operating
the Project. In a separate intra-jurisdictional agreement, CPS agreed to convey
to the City 40 acres of additional open space land as compensating property. 

Approximately one week after the City Council
approved the Project, Hill filed suit in state district court seeking
injunctive and declaratory relief; Hill also challenged the Project in federal
court and before the Public Utility Commission. Hill pled several declaratory
judgment claims in the state case, including that Ordinance 100326 granting CPS
an easement for the Project was void as a breach of the "contract with the
voters" created by Proposition 3 and its enabling resolution and
ordinances. The parties filed multiple partial summary judgment motions on the
various claims raised by Hill. The trial court granted summary judgment in
favor of the City on Hill's claims under Article XI, § 11 of the Texas
Constitution, the Texas Open Meetings Act and the City Charter. None of those
orders are challenged on appeal. The parties also filed cross-motions for
summary judgment on Hill's common law claim for breach of the City's
"contract with the voters," as well as his statutory claims under
Chapter 334 of the Local Government Code and Chapter 26 of the Texas Parks
and Wildlife Code. The trial court overruled all of the parties' objections to
the summary judgment evidence, denied Hill's summary judgment motion, and
granted the City's summary judgment motion as to all of Hill's remaining
claims. The trial court further ordered Hill to pay $884,332 in attorney's fees
to the City. (2) 

Issue Presented

On appeal, Hill challenges only the summary
judgment in favor of the City on his common law breach of the "contract
with the voters" claim, and asserts the trial court instead should have granted
summary judgment for Hill on that claim. Hill also challenges the award of
attorney's fees because they were not segregated by claim. The City's position
in the trial court, and on appeal, is that it properly conveyed to CPS a
limited easement to use a small portion of the Proposition 3 land for the
Project pursuant to the express statutory authority granted to it in section
334.041(b) of the Local Government Code. Tex. Loc. Gov't
Code Ann. § 334.041(b) (Vernon 2005) (providing in relevant part, "[a]
municipality . . . may acquire, sell, lease, convey, or otherwise dispose of
property or an interest in property, including an approved venue project, under
terms and conditions determined by the municipality . . . "). The basis of
the City's Third Motion for Partial Summary Judgment on Hill's "contract
with the voters" claim was that the specific and broad grant of authority
in section 334.041(b) conflicts with, and thus supersedes, the common law
doctrine of "contract with the voters." On the other hand, Hill's
summary judgment motion asserted, in relevant part, that the City had not
"conveyed" an interest in the property to CPS under section
334.041(b), but rather the Ordinance had simply and plainly changed the
dedicated use of the approved venue project and was thus unenforceable as a
matter of law. Hill also asserted that Chapter 334 does not abrogate or
"trump" the common law doctrine of "contract with the
voters," but instead works in harmony with, and is "subject to,"
the doctrine. While the trial court's order granting summary judgment for the
City does not recite the specific grounds on which it is based, the sole ground
in the City's summary judgment motion with respect to Hill's "contract
with the voters" claim was that the express statutory language in section
334.041(b) directly conflicts with, and thus supersedes, the common law
contract with the voters created by Proposition 3, and its enabling resolutions
and ordinances. 

Summary Judgment

Standard of Review 

When both parties move for summary judgment, and
the trial court grants one motion and denies the other, the appellate court
considers the summary judgment evidence presented by both sides, determines all
questions presented, and, if it determines the trial court erred, renders the
judgment the trial court should have rendered. Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); FM Props.
Operating Co. v. City of Austin, 22 S.W.3d
868, 872 (Tex.
2000). We review the trial court's summary judgment de novo. Provident Life and Acc. Ins. Co. v. Knott, 128 S.W.3d
211, 215 (Tex.
2003). When reviewing a summary judgment, we take as true all evidence
favorable to the nonmovant, indulging every
reasonable inference and resolving any doubts in the nonmovant's
favor. Id.
A party moving for a traditional summary judgment must show that no genuine
issue of material fact exists and that it is entitled to summary judgment as a
matter of law. Id. at 215-16; Tex.
R. Civ. P. 166a(c). When the trial court's order does not specify the
grounds for granting summary judgment, the appellate court must affirm if any
of the theories presented in the summary judgment motion have merit. Knott, 128 S.W.3d at 216; Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 626 (Tex.
1996). Statutory construction is a question of law that we review de
novo. Tex. Dep't of Transp. v. Needham,
82 S.W.3d 314, 318 (Tex.
2002).

"Contract with the Voters" Doctrine

The doctrine of "contract with the
voters" derives from article I, section 16 of the Texas Constitution which
prohibits laws impairing the obligation of contracts. Tex. Const. art. I, § 16. The
constitutional underpinnings of the doctrine have long been recognized by the
Texas Supreme Court. In San Saba County v. McCraw,
the seminal "contract with the voters" case, the Supreme Court held
that "the vital conditions and safeguards surrounding the tax voted at the
time of the election thereon become a part of the very election itself,"
and any law that impairs and destroys the voters' rights existing at the time
of the vote violates article 1, section 16 of the Texas Constitution. San
Saba County v. McCraw, 130 Tex. 54, 108 S.W.2d
200, 202-03 (1937) (also acknowledging that "where the Constitution
authorizes the levy of a special tax by a vote of the taxpaying voters of a
municipality . . . such tax is not levied by the municipality . . . but by the
voters to whom has been delegated the taxing power"). In McCraw, a majority of the voters approved a
fifteen-cent road tax to be levied by the county, as required by the Constitution;
the implementing statute further provided that the voters could repeal the road
tax after two years, and that no bonds could be issued. Id. at 201. The legislature subsequently enacted a statute
authorizing the commissioners' court to issue 40-year bonds on its own motion
that would constitute a charge against the fifteen-cent road tax. Id. at 202. The Supreme Court concluded that, by authorizing
the county commissioners' court to issue the 40-year road-funding bonds without
a taxpayer vote, the legislature had impaired the voters' rights created at the
time they approved the fifteen-cent road tax, including the right to repeal the
tax, thus violating not only the particular constitutional provision
authorizing the road tax to be imposed by the voters, but also article I,
section 16 prohibiting the impairment of contracts. Id.
at 203; see also San Antonio River Auth. v. Shepperd,
157 Tex. 73,
299 S.W.2d 920, 924-26 (1957) (recognizing and applying the "contract with
the voters" concept). (3)

As noted by both parties in their briefs, the
"contract with the voters" doctrine encompasses two related
principles governing (i) the expenditure of the tax
funds for the approved purpose, and (ii) the continued use of the project for the
approved purpose. Applying the first principle, when the voters approve a
specific project, the proceeds of the tax or bond are "'earmarked' with
the character of a trust fund which may not be diverted to another purpose or
project." Op. Tex. Att'y Gen. No. GA-0156, 2004 WL
367365, at *6 (2004) (citing Black v. Strength, 112 Tex. 188, 246 S.W.
79 (1922), and Fletcher v. Ely, 53 S.W.2d 817, 818 (Tex. Civ.
App.--Amarillo 1932, writ ref'd)); see also Lewis
v. City of Fort Worth, 126 Tex. 458, 89 S.W.2d 975, 978 (1936) ("the
proceeds of bonds voted by the people must be expended for the purposes for
which they were voted"); Barrington v. Cokinos,
161 Tex. 136, 338 S.W.2d 133, 142 (1960) (same). For example,
in Op. Tex. Att'y Gen. No. GA-0156, the
Attorney General concluded that the terms of the election pursuant to which
Terrell County voters approved a venue tax for park improvements under Chapter
334 of the Local Government Code constituted a "contract with the
voters," and the county commissioners' court was only authorized to use
the venue tax funds for the specific improvements outlined in the election
orders. Op. Tex. Att'y Gen. No. GA-0156,
2004 WL 367365, at *9.

Under the second principle of the "contract
with the voters" doctrine, when land is purchased with voter-approved
funds it becomes dedicated to that purpose and cannot be used for any other
purpose that would interfere with the stated public use. City of Beaumont
v. Moore, 146 Tex. 46, 202 S.W.2d 448, 452 (1947) (where city purchased
land with proceeds of municipal bonds approved for acquiring an airport, land
became dedicated for public use as an airport and could not be used for any
other inconsistent purpose until its use as an airport was lawfully abandoned).
Generally, when land has been dedicated to a public use, such as for a park, no
inconsistent use may be made as long as the public is still using the land as a
park. Zachry v. City of San Antonio,
157 Tex. 551,
305 S.W.2d 558, 560 (1957). In Zachry,
the court held that where the land had been dedicated to the city and used as a
public park for more than 100 years, without any abandonment, the city's
attempted lease of a portion of the park to an individual for use as an
underground parking garage was void. Id.
at 562-63 (abandonment of dedicated property occurs when the dedicated use
becomes impossible to execute, or the object of the use must fail).

Applying both concepts of a "contract with
the voters" to this case, the City would be obligated to: (i) use the venue tax funds for their approved purpose, i.e.,
acquisition of land for use as open space and linear parks; and (ii) use the
land acquired with the venue tax funds for the approved or
"dedicated" purpose, i.e., as open space or linear parks.
There is no dispute that the City complied with its first obligation by
acquiring the Mayberry and Chris Hill Tracts with the venue tax funds for use
as public park land, as contemplated by Proposition 3.
The dispute arises out of whether the City has breached its second obligation
under its "contract with the voters" - to use the land for the
approved public park purpose - by granting CPS a limited easement for
construction of the electrical transmission line, thereby "changing the
use" of the approved venue project. The City concedes that, for purposes
of reviewing the summary judgment granted by the trial court, we must take as
true Hill's allegation that the Project constitutes an "inconsistent
use" of the Proposition 3 land.

Section 334.041 of the Texas
Local Government Code

Under Chapter 334 of the Local Government Code,
enacted in 1997 and entitled "Sports and Community Venues," a county
or municipality may plan, acquire, establish, develop, construct, or renovate a
venue project, and may raise funds to accomplish such tasks, if, among other things,
the voters approve the project. Tex. Loc. Gov't Code Ann. § 334.021 (Vernon 2005). An
"approved venue project" means a sports and community venue project
that has been approved under Chapter 334 by the voters of a municipality or
county. (4) Tex. Loc. Gov't
Code Ann. § 334.001(1) (Vernon 2005). Chapter 334 requires that a resolution
and ballot language proposing a venue project describe the specific venue
project, and provides that sales and use taxes deposited in a venue-project
fund may be expended only for voter-approved venue projects. See Tex.
Loc. Gov't Code Ann. §§ 334.021 (resolution
authorizing project and method of financing), .024 (election), .042 (venue
project fund) (Vernon 2005); see also Op. Tex. Att'y
Gen. No. GA-0156, 2004 WL 367365, at *5.

The particular statute at issue in this case,
section 334.041, entitled "General Powers," grants broad authority to
municipalities and counties with regard to venue projects. Subsections (a) and
(b), relevant to this appeal, provide as follows:

(a) A municipality or county may perform any
act necessary to the full exercise of the municipality's or county's
powers under this chapter.

(b) A municipality or county may acquire, sell,
lease, convey, or otherwise dispose of property or an interest in property, including
an approved venue project, under terms and conditions determined by
the municipality or county. In a transaction with another public entity that is
made as provided by this subsection, the public purpose found by the
legislature under Section 334.044 is adequate consideration for the
municipality or county and the other public entity.

Tex. Loc. Gov't Code
Ann. § 334.041(a), (b) (Vernon 2005) (emphasis added); see Tex. Loc. Gov't Code Ann. § 334.044(a) (Vernon 2005) (stating that,
"the legislature finds for all constitutional and statutory purposes that
an approved venue project is owned, used, and held for public purposes by the
municipality or county").

Analysis

Hill's main argument on appeal is that, while section
334.041(b) permits the City to convey an
interest in an approved venue project, it does not say
that the City may change the approved
use of the venue project. Hill argues the omission of express
authority to change the use of a venue project from section 334.041(b) gives
rise to the "clear implication" that the use of an approved venue
project must not change - regardless of the City's conveyance of the project to
a private third party or other public entity. In essence, then, Hill argues
that section 334.041(b) is "subject to," or incorporates, both
principles of the "contract with the voters" doctrine. Therefore,
this appeal requires us to address the interplay between section 334.041(b) and
the common law "contract with the voters" concept with respect to the
approved use of the Proposition 3 land.

The City asserted at oral argument that the
dispute can be resolved by answering two questions: (1) did the legislature
have the authority to supersede the common law "contract with the voters"
doctrine by contrary legislation? and (2) if so, did
the legislature do so in section 334.041(b)? The City contends the answer to
both questions is "yes," and we are constrained to agree.

1. Legislative Authority to Supersede Common Law

In construing statutes, courts begin by
interpreting the statutory language in a manner that renders it consistent with
constitutional requirements, if possible, because the legislature is presumed
to have intended compliance with the constitution. City of Houston v. Clark,
197 S.W.3d 314, 320 (Tex. 2006); see also
Tex. Gov't Code Ann. § 311.021(1) (Vernon 2005)
("[i]n enacting a statute, it is presumed that
... compliance with the constitutions of this state and the United States
is intended"). The courts further presume that statutes are enacted by the
legislature with full knowledge of, and reference to, the existing law. City of San Antonio v. Hardee,
70 S.W.3d 207, 213 (Tex.
App.--San Antonio 2001, no pet.). When a statute directly conflicts with
a common law principle or claim, the statutory provision controls and preempts
the common law. Cash America Int'l Inc. v. Bennett, 35 S.W.3d 12, 16 (Tex. 2000) (abrogating
common law claims is "disfavored and requires a clear repugnance between
the common-law and statutory causes of action"); Bartley v. Guillot, 990 S.W.2d 481, 485 (Tex. App.--Houston [14th
Dist.] 1999, pet. denied) (where the common law is revised by statute, the
statute controls). A statute may be interpreted as abrogating a common law
principle only when its express terms or necessary implications clearly
indicate the legislature's intent to do so. Bruce v. Jim
Walters Homes, Inc., 943 S.W.2d 121, 122-23 (Tex. App.--San Antonio 1997,
writ denied). "If a statute deprives a person of a common law
right, the statute must be strictly construed and will not be extended beyond
its plain meaning." Id. at 123
(citing Smith v. Sewell, 858 S.W.2d 350, 354 (Tex. 1993)). Therefore, the answer to the
first question concerning whether the legislature may enact legislation that
preempts or supersedes a common law principle, even one that is
constitutionally-derived, is affirmative.

2. Interplay between § 334.041(b) and
"Contract with Voters"

Reaching the crux of this appeal, we must next
determine whether section 334.041(b) evidences the legislature's intent to
supersede the common law concept of "contract with the voters,"
particularly the second principle requiring continuous use for the dedicated
public purpose. In the trial court and on appeal, the City asserts that, under
the plain language of section 334.041(b), its "contract with the
voters" only extended to the first principle, i.e., the initial
expenditure of the venue tax funds to acquire the property for use as park
land. The City contends the broad grant of authority in section 334.041(b)
supersedes or preempts the second principle of "contract with the
voters," and it therefore has no continuing obligation or duty to continue
using the acquired land for the dedicated public purpose, i.e., as
open or linear park land. To illustrate, the City acknowledged at oral argument
that, according to its reading of the statute, it could use a voter-approved
venue tax to acquire land for construction of a major league baseball field as
a Chapter 334 "approved venue project," and then later, under the
authority of section 334.041(b), convey that land, or a portion thereof, to a
private third party for use as a toxic waste dump without violating its
"contract with the voters." (5)

When construing a statute, the court's primary
purpose is to give effect to the legislature's intent. Tex. Water Comm'n v. Brushy Creek Mun. Util. Dist., 917 S.W.2d 19, 21 (Tex. 1996). To determine
the legislative intent, a court may consider the language of the statute, the
legislative history, (6) the circumstances of
the statute's enactment, the object the legislature was seeking to attain, the
common law and former statutory provisions on the same or similar subjects,
administrative construction of the statute, and the consequences of particular
constructions. Tex. Gov't Code Ann. § 311.023 (Vernon 2005);
Union Bankers Ins. Co. v. Shelton, 889
S.W.2d 278, 280 (Tex.
1994). The court must, however, look first to the plain and common
meaning of the statute's words, and if the statutory text is unambiguous the
court must adopt the interpretation supported by the plain language - unless
that interpretation would lead to absurd results. Tex. Dep't of Protective and Regulatory Servs.
v. Mega Child Care, Inc., 145 S.W.3d 170, 177 (Tex. 2004); Fitzgerald v. Advanced Spine Fixation
Sys., Inc., 996 S.W.2d 864, 865-66 (Tex.
1999) (if a statute is unambiguous, rules of construction or other extrinsic
aids cannot be used to create ambiguity). Finally, the construction of a
statute by an agency charged with its execution is entitled to "serious
consideration" unless the agency's construction is clearly inconsistent
with the legislature's intent. Brushy Creek, 917 S.W.2d at 21; Tex. Gov't Code Ann. § 311.023(6) ("in construing a statute . . . a court may consider . . . administrative
construction of the statute").

Here, we are faced with conflicting
interpretations of section 334.041(b), with the City arguing the statute
directly conflicts with, and thus supersedes, the continuous-use principle of
the common law "contract with the voters" doctrine, and Hill arguing
the statute is consistent with, and "subject to," the common law
concept. Applying the above principles of statutory construction, we must begin
with the presumptions that, when it enacted section 334.041(b), the legislature
intended it to comply with the Constitution and it was aware of the
constitutionally-derived, common law concept of "contract with the
voters." Next, we must construe the legislature's intent behind section
334.041(b) based on the statute's plain language, considering it as a whole and
within the context of Chapter 334. If we conclude the statutory text is
unambiguous, we must adopt the interpretation supported by the plain language,
unless it leads to absurd results. If we determine that the statute directly
conflicts with the common law, the statute controls.

Looking at section 334.041 as a whole, and within
the context of Chapter 334, section 334.041 delineates the "powers and
duties" of a municipality with respect to the "planning, acquisition,
establishment, development, construction, or renovation" of sports and
community venue projects. Tex. Loc. Gov't Code Ann. §§ 334.021(a), 334.041 (Vernon 2005).
As noted, subsection (a) of section 334.041 grants a municipality the sweeping
power to "perform any act necessary to the full exercise of [its]
powers" under Chapter 334. Tex. Loc. Gov't Code
Ann. § 334.041(a); see Op. Tex. Att'y
Gen. No. GA-0602, 2008 WL 410391, at *1 (2008) (recognizing broad scope of
power under subsection (a)). The remaining subsections (b) through (f) more
specifically describe the municipality's power to enter into contracts and take
certain actions with respect to acquiring and developing approved venue projects;
subsection (f) restricts the municipality's use of ad valorem taxes for an
approved venue project. Tex. Loc. Gov't Code Ann. § 334.041(b)-(f) (Vernon 2005).

Turning to the provision at issue, subsection (b)
of section 334.041, the plain language of the first sentence gives a broad
unequivocal grant of authority to a municipality to "acquire, sell, lease,
convey, or otherwise dispose of property or an interest in property, including
an approved venue project, under terms and conditions determined by the
municipality." Tex. Loc. Gov't Code Ann. §
334.041(b) (emphasis added). By its plain language, it leaves the "terms
and conditions" of such transactions completely to the municipality's
discretion, and contains no express limitation or restriction on the
municipality's power to "convey or otherwise dispose of" an interest
in an approved venue project. Reading subsection (b) together with subsection
(a)'s similarly unrestricted grant of authority to "perform any act
necessary" to exercise the municipality's powers under Chapter 334 compels
us to conclude that by enacting section 334.041 the legislature intended to
provide municipalities with almost unlimited discretion and authority to
"acquire, sell, lease, convey, or otherwise dispose of" approved
venue projects, or portions thereof.

Hill argues that the second sentence of section
334.041(b) shows the legislature intended that the venue project property
continue to be used for the dedicated purpose, despite any conveyance under
subsection (b). The second sentence provides that, in a subsection (b)
transaction between a municipality or county and
another public entity, the "public purpose" recognized in section
334.044 is adequate consideration for the transaction. Tex.
Loc. Gov't Code Ann. §§334.041(b), 334.044 (stating
that an approved venue project is held by the municipality or county for public
purposes). Hill asserts the second sentence of subsection (b) modifies
the broad powers granted in the first sentence, and clearly shows the
legislature intended to authorize a municipality to convey or dispose of an
interest in an approved venue project, but only if the dedicated
public purpose was continued. We respectfully disagree. If the legislature had
intended to restrict a municipality's broad grant of power to dispose of an
interest in a venue project by making it "subject to" the continuous
use of the project for the dedicated purpose, it could have easily so provided.
It chose not to. (7) See Fitzgerald, 996
S.W.2d at 866 ("it is a fair assumption that the Legislature tries to say
what it means, and therefore the words it chooses should be the surest guide to
legislative intent"); see also Hardee, 70 S.W.3d at 213
(stating that if legislature wanted to exempt annexation challenges from
mandamus and injunctive remedies provided for violations of Open Meetings Act,
it could have done so, but did not). As noted by the Supreme Court, when courts
"stray from the plain language of a statute, [they] risk encroaching on
the Legislature's function to decide what the law should be." Fitzgerald,
996 S.W.2d at 866.

Finally, Hill makes an alternative argument that
the City's actions are not authorized by section 334.041(b) because the City
cannot viably "convey" a property interest to CPS since it is merely
a City agency and cannot hold title to property. See Guadalupe-Blanco River
Auth. v. Tuttle, 171 S.W.2d 520, 521, 526 (Tex. Civ. App.--San Antonio
1943, writ ref'd w.o.m.,
174 S.W.2d 589) (title to the system is not vested in CPS Board, but is held by
the city); San Antonio
Indep. Sch. Dist. v. Water Works Bd. of Trustees,
120 S.W.2d 861, 865 (Tex. Civ. App.--Beaumont 1938, writ ref'd)
(CPS Board is agent of the city, and its "possession" and
"holding" of property for purpose of supplying electricity and gas to
the people is a "possession" and "holding" by the city); see
also Tex. Att'y Gen. Op. LO-98-058, 1998 WL
457327, at *1 (1998) (utility board is agent of the city and board cannot own
real property). The City responded at length, asserting that transfers of such
property rights like easements and right-of-ways between the City, CPS and SAWS
are distinguishable from transfers of fee simple property interests, and are
proper "conveyances" of property interests under Chapter 334; it also
asserted that transfers of such limited rights of access are commonplace and
necessary, attaching several examples of such agreements and conveyances to its
supplement to its Third Motion for Summary Judgment. We agree. The City's
conveyance of a limited easement to CPS for extension of its electrical system,
as occurred in this case, is distinguishable from the cases relied on by Hill
because it is not a transfer of fee simple title to real property, but merely a
limited right of access necessary for the utility company to fulfill its
independent duty to maintain its utility system. See City
of Robstown v. Barrera, 779 S.W.2d 83, 85 (Tex. App.--Corpus Christi 1989,
no writ); Bd. of Trustees of the City of Eagle Pass Water Works Sys. v. Deer Run Props., Inc., 619 S.W.2d 609, 612 (Tex.
Civ. App.--San Antonio 1981, no writ). 

Conclusion

Given the statute's unambiguous, plain, and unrestricted language, we must
conclude that there is a direct conflict between section 334.041(b) and the
second principle of the common law "contract with the voters." Faced with a direct conflict, the statute controls over the common
law "continuous use" concept. Therefore, the City had the
authority to grant an easement to CPS across the Proposition 3 land for
construction of the electrical transmission line under the specific provisions
of section 334.041(b). Accordingly, we hold the trial court did not err in
granting summary judgment in favor of the City on Hill's "contract with
the voters" claim, and in denying summary judgment for Hill.
(8)

Attorney's
Fees

Because the City prevailed on summary judgment,
the trial court awarded it $884,332 in unsegregated
attorney's fees for defending against Hill's various claims.
(9) On appeal, Hill asserts the City was required to segregate its
attorney's fees between claims because not all the claims asserted by Hill
authorized the recovery of attorney's fees - particularly, his claim for
injunctive relief based on a violation of Chapter 26 of the Texas Parks and
Wildlife Code. See Tex. Parks & Wildlife Code Ann. §§ 26.001, et
seq. (Vernon 2002) (containing no provision for recovery of attorney's
fees based on a violation of the chapter). Hill does not claim the trial court abused its discretion in awarding attorney's fees to the
City, or challenge the amount of the fees as unreasonable. The City
responds that (i) except for his request for an
injunction, all of Hill's claims were pled as claims for declaratory relief on
which attorney's fees are recoverable, and (ii) Hill's request for injunctive
relief was intertwined with his substantive claims, and therefore the legal
services pertaining to each need not be segregated. We apply a hybrid standard
of review to the issue of segregation because it is a mixed question of law and
fact. Tony Gullo Motors I, L.P. v. Chapa,
212 S.W.3d 299, 312-13 (Tex.
2006).

Texas
law does not permit the recovery of attorney's fees unless authorized by
statute or contract. Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 567 (Tex. 2002).
In Chapa, the Supreme Court reaffirmed the general rule requiring
segregation of attorney's fees, recognizing that the exception had practically
swallowed the rule. Chapa, 212 S.W.3d at 311-13.
The Court held that intertwined facts underlying claims for which attorney's
fees are recoverable and unrecoverable do not excuse a party from segregating
fees between claims - "it is only when discrete legal services advance
both a recoverable and unrecoverable claim that they are so intertwined that
they need not be segregated." Id.
at 313-14; see Varner v. Cardenas, 218
S.W.3d 68, 69 (Tex.
2007) (per curiam) (characterizing Chapa as
holding that "a prevailing party must segregate recoverable from
unrecoverable attorney's fees in all cases"). Thus, the general duty to
segregate fees applies, unless a party meets its burden of establishing that
the same discrete legal services were rendered with respect to both a
recoverable and unrecoverable claim. Chapa, 212
S.W.3d at 314; Hong Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 455 (Tex. App.--Houston [1st
Dist.] 2007, no pet.). 

In support of the fee award, the City first
responds that because Hill pled all of his various claims as part of a
declaratory judgment action, for which attorney's fees are recoverable by statute, it had no duty to segregate fees because they all
became recoverable claims. See Tex.
Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997) (authorizing
award of attorney's fees in suit for declaratory judgment). However, a review
of Hill's pleadings does not support that statement. Hill filed a series of
amended petitions throughout the course of this lawsuit, which included many
different causes of action broadly pled under the following categories: (i) "constitutional violation" of article XI, § 11
of the Texas Constitution; (ii) violations of the Texas Open Meetings Act;
(iii) violation of Chapter 26 of the Texas Parks & Wildlife Code; (iv)
breach of contract; (v) fraud; (vi) application for temporary and permanent
injunction; and (vii) "declaratory judgments" seeking
"declaratory, injunctive and mandamus relief" from enforcement of the
City Council's approval of the Project based on the various alleged statutory violations,
including violations of Chapter 334 of the Local Government Code. Clearly then,
Hill pled other claims besides just declaratory judgment claims, particularly
claims for fraud and for injunctive relief based on various grounds. Moreover,
under Chapa, the determining factor as to whether fees must be
segregated is the type of legal services rendered with respect to the
particular claims, not simply the manner of pleading or the type of claim pled.
Chapa, 212 S.W.3d at 313-14. The test under Chapa
is "whether discrete legal services advance both a claim or
defense for which fees are recoverable and a claim or defense for which fees
are unrecoverable . . . ." Nguyen, 229 S.W.3d
at 455. The City's first attempt to justify the award of all its unsegregated attorney's fees fails. 

The City next asserts the exception to the
general duty to segregate fees, contending that all of Hill's claims were
"inextricably intertwined." Based on the record before us, we cannot
agree that the City met its burden of establishing the exception to the general
rule. First, Chapa clarified that intertwined facts alone are
insufficient to excuse segregation. In Chapa the Court expressly
disavowed the prior rule that suggested that a common set of underlying facts
necessarily makes all claims arising therefrom
"inseparable" and thus all legal fees recoverable. Chapa,
212 S.W.3d at 313-14; Varner, 218 S.W.3d at 69 (noting that, "[i]n Chapa, we reestablished the rule that
attorney's fees are recoverable only if necessary to recover on a contract or
statutory claim allowing them, and eliminated the exception for fees
incurred solely on separate but arguably intertwined claims") (emphasis
added).

Further, the City presented no proof that the
legal services rendered applied to all of Hill's claims, and could not be
segregated. The City's written request for attorney's fees was supported only
by affidavits; there was no testimony or other evidence presented at the
hearing on attorney's fees. The affidavits by the City's attorneys summarize
the total hours spent on the case by attorney time and paralegal time, describe
the hourly rates charged, and the total expenses incurred. Neither of the
affidavits details the actual legal work performed. Neither of the affidavits
contains a statement that the legal services provided were intertwined and
inseparable between claims, including those for injunctive relief. In other
words, the City presented no proof to support a finding under the Chapa
standard that the legal services provided in defending against the Chapter 26
injunction were the same as, or "inextricably intertwined" with, the
legal services rendered to defend against Hill's other claims. See Nguyen,
229 S.W.3d at 455 (party seeking attorney's fees bears burden of demonstrating
that exception to duty to segregate fees applies). Because the City failed to
present any evidence supporting an exception, segregation of fees is required.
Based on this record, the trial court erred in awarding the City attorney's
fees for the total number of hours spent on the case. Accordingly, we reverse
the award of attorney's fees and remand for a new trial on the issue of
attorney's fees. Tex. R. App. P. 44.1(b); see Chapa, 212 S.W.3d at
314; see also A.G. Edwards & Sons, Inc. v. Beyer, 235 S.W.3d 704,
710 (Tex.
2007). 

Conclusion

Based on the foregoing reasons, we affirm the trial court's judgment in
favor of the City, but reverse the award of attorney's fees to the City and
remand for a new trial on attorney's fees.

                                                                                                            Phylis J. Speedlin, Justice 

1. Hill does not challenge the constitutionality of the
statute on appeal. 

2. During the pendency of this litigation, the electrical
transmission line was constructed. The City represents that four utility poles
were placed on the Chris Hill Tract, with no poles placed on the Mayberry
Tract; each pole has a base of approximately 80 square feet. In addition, high
wires span the poles, overlapping the existing right-of-way along State Highway
211. It is undisputed that no Proposition 3 venue tax funds were used for
construction of the Project. 

3. Although not binding on us, we note that recent
opinions by the Texas Attorney General have recognized the constitutional basis
of the "contract with the voters" doctrine, as well as its continuing
validity. See Op. Tex. Att'y Gen.
No. GA-0156, 2004 WL 367365, at *5 (2004) (acknowledging that "Texas
courts have held that the express terms of resolutions and orders calling a tax
or bond election, at which voters are asked to approve financial undertakings
of a governmental body relating to the purposes for which funds shall be used,
become a contract with the voters who are entitled to receive substantially all
of the benefits and security of that contract"); Op. Tex. Att'y Gen. No. GA-0049, 2003 WL 1697188, at *3 (2003)
(stating that a tax or bond proposition, and its constitutional and statutory
conditions and safeguards, form a "contract with the voters" and any
attempt to substantially alter the rights and expectations of the voters will
be treated as a violation of article I, section 16 of the Texas Constitution,
prohibiting laws impairing the obligations of contracts); Op. Tex. Att'y Gen. No. JC-0400, 2001 WL 871791, at *4 (2001)
(stating that under the San Saba rule, the terms of an order calling
an election at which voters are asked to approve financial undertakings of a
governmental body become a "solemn contract with the voters," and
"any attempt to substantially alter the rights and expectations of the
voters will be treated as a violation of . . . article I, section 16 of the
Texas Constitution"). 

4. A "sports and community venue project" or
"venue project" means a venue and related infrastructure that is
planned, acquired, developed, constructed or renovated under Chapter 334. Tex. Loc. Gov't Code Ann. § 334.001(5)
(Vernon 2005). A "venue" is defined to include a municipal
parks and recreation system, or improvements or additions thereto, while
"related infrastructure" includes a store, restaurant, on-site hotel,
concession, parking or transportation facility, road or street, water or sewer
facility, park, "other . . . improvement that relates to and enhances the
use, value, or appeal of a venue" and "any other expenditure
reasonably necessary to construct, improve, renovate, or expand a venue . . .
." Id.
§ 334.001(3), (4)(D) (Vernon 2005). 

5. The City conceded that other statutes, such as
environmental laws, might prevent that particular use of the land, but that
such a change in use would be permitted under section 334.041(b). 

6. Hill attached excerpts of the legislative history of a
proposed 2003 amendment to Chapter 334 to his summary judgment motion, arguing
that legislators' statements during the debate show their intent that use of
approved venue projects be restricted to their dedicated public purpose,
regardless of a conveyance under section 334.041(b). The proposed amendment did
not pass. Hill asserts that the amendment's failure to pass shows Chapter 334
was understood by the drafters to require the continuation of the dedicated
public use; therefore, an amendment stating this requirement was not necessary.
Hill's argument is based on speculation as to the reason the amendment did not
pass. Moreover, legislators' statements during a debate cannot change the plain
meaning of the statute, which in this case grants broad unrestricted authority
to municipalities to make conveyances of approved venue projects. See
Fleming Foods of Tex., Inc., v. Rylander, 6
S.W.3d 278, 284 (Tex.
1999) (legislative history cannot be used to alter or disregard express
statutory terms when their meaning is clear in context of entire code). 

7. On the other hand, we note the legislature did choose
to expressly codify the first principle of "contract with the voters"
concerning the initial use of the venue tax fund. See Tex. Loc. Gov't Code Ann. § 334.042(d) (Vernon 2005) (providing,
"[t]he municipality or county may use money in the venue project fund to:
(1) reimburse or pay the costs of planning, acquiring, establishing,
developing, constructing, or renovating one or more approved venue projects in
the municipality or county; (2) pay the principal of, interest on, and other
costs relating to bonds or other obligations issued by the municipality or
county or to refund bonds, notes, or other obligations; or (3) pay the costs of
operating or maintaining one or more approved venue projects"). 

8. We note, however, that the basic foundation of Hill's
complaint is compelling - that at the time they approved Proposition 3 the
voters had no actual notice that the City could subsequently, on its own
initiative, without voter approval, convey an interest in the approved venue
project to a public or private entity for a different use of the property. If
the legislature believes voters should be informed, at the time they are asked
to approve funding for a proposed venue project, that the municipality or
county has the statutory authority to subsequently convey the venue project, or
an interest in the project, for a different use without further voter approval,
we suggest the legislature consider amending Chapter 334 to include that
requirement. 

9. It is undisputed that the City made no attempt to
segregate its attorney's fees. Further, we note that the attorney's fees were
assessed only against plaintiffs Chris Hill and Gallagher Headquarters Ranch
Development, Ltd.; no fees were assessed against Julie Hooper because she did
not take an active role in the lawsuit.